550 So.2d 680 (1989)
STATE of Louisiana, Appellee,
v.
Melton JACKSON, Appellant.
No. 20668-KA.
Court of Appeal of Louisiana, Second Circuit.
August 23, 1989.
*681 J. Spencer Hays, Indigent Defender Bd., Benton, for appellant.
William J. Guste, Jr., Atty. Gen., Baton Rouge, Henry N. Brown, Dist. Atty., Bobby L. Stromile, Asst. Dist. Atty., Benton, for appellee.
Before MARVIN, SEXTON, and NORRIS, JJ.
MARVIN, Judge.
Having been convicted of attempted simple burglary in a jury trial of the charge of simple burglary, defendant appeals, contending the state did not lay a proper foundation for the admission of certain demonstrative evidence and did not present sufficient evidence to convict. He also contends his sentence to two years at hard labor is excessive.
We affirm.

FACTS
Shortly after 10:00 p.m. on May 24, 1987, the silent burglar alarm sounded at Kelly's Discount Tire Store in Bossier City. Within a few minutes Officer Edward Joseph arrived and saw two men standing outside a bay door in front of the store who appeared to be removing something from the store through a broken window pane in the door. Officer Joseph could not identify what was being removed. He saw the men drop what they had when they noticed the police car.
*682 As the men ran toward an apartment complex east of the store, Joseph saw that both were black, one tall and one short, and that the tall man was wearing a dark pullover shirt, maroon cutoff shorts and white tennis shoes. Joseph chased the short man through a breezeway in the apartment complex but could not catch him.
The tall man ran into an enclosed area in the complex where he remained hidden for a few minutes. When he reappeared, he was seen by one or more apartment residents who had come outside after hearing noises. They alerted Officer Joseph. Joseph then detained the man, who was defendant Jackson. Jackson's dress and physical appearance matched that of the tall man Joseph had seen running from the tire store.
A jug from a water cooler was filled with coins and was kept in a locked office inside the store. This jug was found about five feet outside the bay door. Two metal boxes that were kept in an unlocked safe in the same office were also found nearby. The locked office door had been kicked in to gain entry.
The store manager, son of the owner, arrived shortly after Officer Joseph and unlocked the bay door, the only entrance into the building. He said no one was authorized to enter the store while it was closed at night. He testified that the jug contained about $400 in coins, weighed several hundred pounds, and could not have been moved outside the store by only one person.
Officer Wray photographed a shoe print on the inside office door that had been kicked in and took the tennis shoes defendant was wearing to make comparisons. Wray returned to the store around 7:30 a.m. and removed that part of the door with the shoe print. The door part and the tennis shoes were admitted into evidence over defendant's objection that will be discussed below as an assignment of error.
Officer Wray, an expert in fingerprint identification, tried unsuccessfully to dust the water cooler jug for identifiable fingerprints when he arrived at the scene on the night of May 24. Because the jug had been outside in a drizzling rain, accumulated moisture had obliterated any fingerprints that may have been on the jug. Wray dusted several areas inside the store but found no identifiable prints. He later used a "super glue process" to search for fingerprints on the metal boxes taken from the safe, but found no usable latents and returned the boxes to the store owner.
From his balcony, an apartment resident who responded to the sound of breaking glass saw two men, one tall and one short, running through shrubbery between the tire store and the apartment complex. He testified that the tall man, wearing a dark blue T-shirt, cutoff jeans and white sneakers, ran across the apartment complex parking lot into an area between two buildings and reappeared a few minutes later.
Another apartment resident, who went outside after the two men had reached the apartment complex, testified that one of the men, wearing a tank top and maroon shorts, appeared from an alleyway and began talking with several apartment residents "acting like nothing happened."
These two witnesses also identified defendant as one of the men they had seen at the apartment complex.

ADMISSIBILITY OF EVIDENCE
The white tennis shoes and part of the office door with the shoe print were admitted over defendant's objection that the tennis shoes were not positively identified as defendant's and the shoe print on the door could have been placed there after defendant was arrested because thereafter the shoes and the door were in custody of the police.
To introduce demonstrative evidence, the state must prove, by visual identification or by chain of custody, that the object, more probably than not, has a relevant connection with the case. The state is not required to eliminate all possibilities that the object has been altered. State v. Sweeney, 443 So.2d 522 (La.1983). Lack of positive identification or a defect in the chain of custody goes to the weight of the evidence rather than to its admissibility. *683 State v. Harriman, 469 So.2d 298 (La.App. 2d Cir.1985), writ denied.
Officer Wray obtained defendant's tennis shoes from him at the scene and tagged them for identification. Shortly after midnight on May 25, 1987, he logged them in as evidence at the police department. Wray's tag was on the shoes when Wray later obtained them from the evidence room for the trial. Wray conceded that "there are thousands of pairs of shoes like this," but identified the shoes by their appearance and the identification tag he attached to them.
Wray photographed the shoe print on the door on the night of the burglary, before removing part of the door the next morning. After police left the scene that night, the store manager boarded up the broken window and locked the entrance door. Wray described the security procedures used in the police evidence room and testified that he knew of no violation of the security rules and regulations during his three years in the identification division. Wray said the print on the door appeared to be exactly the same as it was when he logged the door section into evidence the day after the offense.
The state proved that the tennis shoes and the door section more probably than not, were connected with the burglary. These items were admissible in evidence. The possibility of alteration or mistaken identification was a matter for the jury to weigh and consider in reaching a verdict. See and compare State v. Williams, 362 So.2d 530, 533 (La.1978), and State v. Haarala, 398 So.2d 1093, 1098 (La.1981).

SUFFICIENCY OF EVIDENCE
Defendant contends the evidence was insufficient to support a conviction because none of the state's witnesses saw him, or anyone else, break the window pane, enter the store, or remove the water cooler jug or other items from the store. Although defendant did not testify at trial, he argues, as he did to the jury, that he "could have been walking across the lot, seen the jug of change and the broken window and merely have been curious as to what happened." The sufficiency issue is thus relegated to whether a rational trier of fact could find defendant's explanation unreasonable in the light of the other evidence.
By finding defendant guilty of attempted simple burglary rather than guilty as charged, the jury impliedly resolved partially in his favor any reasonable doubt about his presence inside the store, but obviously found unreasonable his contention that he was innocently at the crime scene.
Our task is not to consider whether some other hypothesis could possibly explain the events in an exculpatory fashion, but to determine if the evidence, whether direct or circumstantial, taken in the light most favorable to the prosecution, sufficiently presented a hypothesis of innocence that was reasonable so as to preclude a rational trier of fact from finding proof of guilt beyond any reasonable doubt. See State v. Abrams, 527 So.2d 1057, 1060 (La. App. 1st Cir.1988).
Although no witness saw defendant enter or leave the store, he was clearly identified as one of the two men Officer Joseph saw standing by the broken window in the locked entrance door at the storefront and removing something from inside the store.
Two metal boxes from the store's safe and the water cooler jug filled with coins were found outside the store. The locked door to the office where they were kept had been kicked in. The shoe print on the door was dusted with graphite to highlight its distinguishing marks and photographed before the door was dismantled for use as evidence. The jury saw the print on the door, the photographs, and the tennis shoes defendant was wearing when he was arrested at the adjacent apartment complex, where he appeared to be attempting to hide in an enclosed area from the view of the police and the then curious apartment residents.
Defendant contends the state failed to prove the shoe print was not on the door before the offense occurred. The possibility that it was there before, when considered with the totality of the evidence of *684 defendant's actions at the scene, does not raise a reasonable hypothesis of innocence.
A rational jury could have reasonably found or inferred that defendant and his accomplice removed the coin-filled jug from inside the store based on testimony that the jug was too heavy to be moved by one person alone. Officer Wray explained why he did not find identifiable fingerprints inside the store or on the items found outside.
The evidence in this record is sufficient to allow a rational trier of fact to conclude that the state proved each essential element of attempted simple burglary beyond a reasonable doubt, to the exclusion of every reasonable hypothesis of innocence, especially the "possibility" suggested by defendant. See and compare State v. Freeman, 506 So.2d 519 (La.App. 1st Cir.1987).

SENTENCE
Defendant's two-year sentence is one-third of the six-year maximum for attempted simple burglary. LRS 14:27, 14:62. Defendant argues he "was eligible for probation" because he is a first felony offender. In such circumstances probation may be considered, but is not mandatory. State v. McKethan, 459 So.2d 72 (La.App. 2d Cir.1984).
Defendant contends the sentencing court failed to consider or to weigh in his favor the fact that imprisonment will impose a hardship on his family. At sentencing, defendant was 26 years old, single, and lived with either his mother or his girlfriend. When the PSI report was prepared, defendant stated he and his girlfriend had a three-month-old child. The report does not mention whether, or how much, defendant contributed toward child support. In his appellate brief five months later, defendant states that his girlfriend "was expecting [his] child" at the time of sentencing and needs his help in supporting and caring for the child.
According to the records of the Caddo Parish School Board, defendant dropped out of school in the 11th grade in 1979. The agent who prepared the PSI report was unable to verify defendant's claims that he had a high school diploma and had worked as a tire changer in Blanchard from 1980-1985. No other work history is mentioned in the PSI.
Defendant's criminal record includes two prior misdemeanor convictions, one in 1979 for gambling and another in 1981 for theft, as well as a November 1986 criminal mischief disposition, the charge on which was dismissed in July 1987, following the six-month DA's probation under CCrP Art. 894. Defendant was arrested for the burglary in May 1987. Although without a prior felony record, defendant has a history of criminal activity.
With this history, defendant told the agent who prepared the PSI report that he had never been arrested or convicted of a crime before and had never been on probation. At the sentencing hearing, defendant claimed he misunderstood the PSI agent's questions. In his statement in the PSI report, defendant also denied committing the burglary. Noting defendant's lack of truthfulness and remorse, the court found his character and attitudes made it likely that he would commit another crime if he received a probated sentence.
Although the court's articulation of the sentencing factors under CCrP Art. 894.1 could have been more detailed, the record clearly shows compliance with Art. 894.1 and an adequate factual basis for the sentence.
We do not find the sentence to be abusively harsh or grossly disproportionate to the severity of the offense. See and compare State v. Lanclos, 419 So.2d 475 (La. 1982), and State v. Stubbs, 427 So.2d 1345 (La.App. 2d Cir.1983).

DECREE
The conviction and the sentence are AFFIRMED.