595 So.2d 789 (1992)
STATE of Louisiana, Appellee,
v.
Terry Michael JOHNSON, Appellant.
No. 23334-KA.
Court of Appeal of Louisiana, Second Circuit.
February 26, 1992.
*791 Stephen T. Sylvester, Ruston, for appellant.
Richard Ieyoub, Atty. Gen., Baton Rouge, Robert W. Levy, Dist. Atty., John L. Sheehan, Asst. Dist. Atty., Ruston, for appellee.
Before MARVIN, NORRIS and VICTORY, JJ.
MARVIN, Chief Judge.
In this appeal of his conviction by jury of aggravated rape, Terry Michael Johnson complains of the trial court's rulings regarding juror challenges (four assignments) and evidentiary objections (seven assignments). Johnson does not question the sufficiency of the evidence to convict.
We affirm.

JUROR CHALLENGES
Johnson contends the trial court erred during jury selection by sustaining the state's challenge for cause of Wilbert Dunn, by overruling Johnson's challenge for cause of Dr. Lazarus, and by allowing the state to peremptorily challenge Shelton Dunn after both the state and Johnson had accepted him as a juror.

Wilbert Dunn
Wilbert Dunn had a cataract in one eye and some hearing loss in both ears from working in a sawmill. The trial court found that Dunn's impaired vision and hearing made him incapable of performing the duties of a juror, and dismissed him on the state's challenge for cause. CCrP Art. 401.
We do not reach the merits of Johnson's assignment that the trial court's ruling was erroneous. The state used only six of its 12 peremptory challenges. CCrP Art. 800 B clearly provides that a defendant cannot complain of the trial court's erroneous allowance to the state of a challenge for cause unless the ruling affords the state more peremptory challenges than it is entitled to by law. Even if the ruling as to Dunn is assumed to be erroneous, *792 that assumption does not avail Johnson because the ruling did not have the effect of allowing the state more than 12 peremptory challenges. See and compare State v. Mills, 505 So.2d 933, 945 (La.App. 2d Cir. 1987), writ denied.

Dr. Lazarus
Dr. Lazarus, a college professor, knew the district attorney and his assistants and considered most of them to be "close friends." He said these friendships would not affect his ability to be an impartial juror. Dr. Lazarus said his serving on the jury would cause hardship for his students only if the trial lasted "for two weeks or more." Neither the state nor the defense expected the trial to last that long. The trial was concluded in three days.
Johnson challenged Dr. Lazarus for cause, arguing that his friendships with the district attorneys and the potential hardship on his students would prevent him from being impartial. The trial court overruled the challenge, finding no indication that either circumstance would affect Dr. Lazarus's ability to be impartial. Johnson objected to the ruling, preserving the issue for review under CCrP Art. 800 A.[1]
A prospective juror's friendship with one or more of the district attorneys disqualifies the juror from jury service only if it is reasonable to conclude that the friendship would influence the juror in arriving at a verdict. CCrP Art. 797(3); State v. Carthan, 377 So.2d 308 (La.1979).
The trial court has broad discretion in ruling on challenges for cause. We do not disturb the trial court's ruling unless a review of the voir dire as a whole shows that the court exercised its discretion arbitrarily or unreasonably, causing prejudice to the defendant. State v. Eastin, 419 So.2d 933 (La.1982); State v. Mitchell, 475 So.2d 61 (La.App. 2d Cir.1985).
We find the trial court did not abuse its discretion here. Dr. Lazarus said during voir dire that he had not yet formed an opinion as to Johnson's guilt or innocence and that there was no reason why he could not be impartial. He categorically denied that his friendship with the prosecuting attorneys would influence his verdict. Dr. Lazarus said his teaching duties would not affect his willingness to serve or his impartiality unless the trial lasted for two weeks or more, a contingency that was not expected to and did not occur. The voir dire examination of Dr. Lazarus, taken as a whole, does not show or suggest any factual basis for disbelieving Dr. Lazarus's assertions of impartiality. See and compare State v. Carthan, supra, and State v. Rexrode, 536 So.2d 671 (La.App. 3d Cir.1988).
Even if we were to find that Dr. Lazarus should have been dismissed for cause, Johnson has not shown that the trial court's ruling was prejudicial. Johnson did not challenge Dr. Lazarus peremptorily even though he had one peremptory challenge remaining before the jury panel was sworn. Johnson has not argued or shown that he accepted any other objectionable juror because he lacked or was "hoarding" peremptory challenges. On this record, we find that any assumed error in the trial court's ruling on Johnson's challenge for cause of Dr. Lazarus was harmless. See and compare State v. Vanderpool and State v. Burge, both cited supra in fn. 1.

*793 Shelton Dunn

The state and Johnson exercised peremptory challenges after choosing a pool of over 40 prospective jurors who were not challenged for cause. Neither the state nor the defendant peremptorily challenged Shelton Dunn. After 12 jurors were accepted by both sides, but before the jury panel was sworn, the state challenged Dunn peremptorily, over defendant's objection, which was overruled.
Defendant contends that the state's "backtracking" to dismiss Dunn caused "undue hardships on the defense because it then became necessary to select another person. That was not anticipated to the strategy of the trial."
A juror may be challenged peremptorily at any time before the jury panel is sworn under CCrP Art. 790, even if the juror has been temporarily accepted by the state and the defense during the exercise of peremptory challenges. Art. 795 B(1); State v. Watts, 579 So.2d 931 (La.1991). After Dunn was dismissed, the state and Johnson accepted the next person tendered from the pool of prospective jurors. No hardship or prejudice to Johnson was suggested, or was caused by, Shelton Dunn's dismissal on the state's peremptory challenge before the jury panel was sworn.

OBJECTION TO TANGIBLE EVIDENCE
Johnson contends the trial court should have sustained his objection to the admission in evidence of a sweatshirt and a knife found in his home during a consent search. He contends his consent was not freely and voluntarily given. Johnson did not file a motion to suppress the evidence before or during trial.
Johnson's failure to file a motion to suppress constitutes a waiver of his complaint that the search was unconstitutional, notwithstanding his objection to the evidence at trial. CCrP Art. 703 F; State v. Brogdon, 426 So.2d 158, 169-170 (La.1983); State v. Lewis, 468 So.2d 557 (La.1985).

OBJECTIONS TO INCULPATORY STATEMENTS
Johnson was arrested on the afternoon of January 9, 1990, nine days after the rape, after giving a tape-recorded statement to police that was inconsistent in some respects with other statements he had made to police earlier that day. Johnson did not file a motion to suppress, but objected at trial that some of the statements were not "voluntary." A hearing on the admissibility of the statements was held outside the jury's presence at trial. The trial court found the state affirmatively showed that the statements were freely and voluntarily made, as required by LRS 15:451, and admitted them in evidence.
The state has not argued, here or below, that Johnson's failure to file a motion to suppress the statements precluded him from objecting to their admissibility at trial. See and compare CCrP Art. 703 B, F; LRS 15:451; and State v. Walker, 534 So.2d 81 (La.App. 3d Cir.1988).
We summarize Johnson's four statements and address his contentions that three of them should not have been admitted in evidence.
Statement # 1. At about 8:40 a.m., during the consent search at Johnson's home, Johnson said, "That's mine," when police found and seized a sweatshirt and a knife that matched the victim's descriptions of her assailant's clothing and weapon. Inspector Hermes testified that Johnson made Statement # 1 spontaneously, without being asked whether the items were his. Hermes gave Johnson Miranda warnings before Johnson made the statement. Johnson made no other statements at the residence and was not interrogated by police until he was later taken to the police station. There Johnson made Statement # 2 after Hermes repeated the Miranda warnings.
Johnson objected to Hermes' testimony about Statement # 1 because Hermes did not warn him that he could stop answering questions at any time if he desired to have a lawyer present. Such a "warning" is not required either by Miranda or *794 by LSA-Const. Art. 1, § 13. LaFave and Israel, Criminal Procedure, Hornbook Ed., pp. 304-306; State v. Rodrigue, 409 So.2d 556, 560-1 (La.1982). The objection was overruled because Johnson made no other statements and was not interrogated by police at his residence.
In the light of these circumstances which Johnson does not dispute, we cannot agree with Johnson's contention that Statement # 1 was not voluntarily made. Even though he was given Miranda warnings before he made the spontaneous statement, Johnson was not interrogated by police at his residence. He was not asked about the shirt and the knife. The record supports the trial court's finding of voluntariness. State v. Benoit, 440 So.2d 129 (La.1983).
Statement #2. During questioning at the Ruston police station which began at about 9:30 a.m., after Johnson read and signed a waiver of rights form, Johnson said that on Thursday, December 28, 1989, before the rape, he had ridden with a friend, Dexter Johnson, to the victim's apartment in Ruston, where the victim declined Dexter's offer to wash her car. The victim had related the same information to police, explaining that she and Dexter knew each other from high school. The victim did not know Terry Johnson, the defendant.
The rape occurred in the early morning hours on Sunday, December 31, first in the victim's apartment and then in her car on a dirt road in a rural area some distance from Ruston.
In Statement # 2, Johnson told police he had not seen the victim or returned to her apartment since December 28, and had never been in the victim's car.
Johnson has not argued, here or below, that Statement # 2 was involuntary or otherwise inadmissible. We mention it to place in factual context his other assignments.
Statement #3. Johnson made this statement to Inspector Kavanaugh at the Lincoln Parish Detention Center at about 1:10 p.m. Contrary to his earlier statement that he had seen the victim only once, a few days before the rape, and had never been in her car, Johnson said in Statement # 3 that on Tuesday, January 2, 1990 [several days after the rape] he saw the victim again, in a retail store, where she accepted his invitation for "some company," and he had consensual sex with her that evening in her car on a country road going toward Choudrant.
Inspector Kavanaugh told Johnson that he could prove the victim had not driven her car after the December 31 rape. Johnson then changed his statement in two respects. First, Johnson said the date of his sexual encounter with the victim in her car was Friday, December 29, rather than Tuesday, January 2. Secondly, Johnson said that the sexual encounter in the car was preceded by his going to the victim's apartment, not by their chance meeting in the retail store.
Johnson argues that Statement # 3 should not have been admitted because he was not "read his rights" again before he made the statement.
When a suspect has been informed of and has validly waived his Miranda rights during his initial questioning by police, those rights need not be repeated before each subsequent interrogation unless the evidence shows either a significant break in the interrogation process, such as a specific request for assistance of counsel, or police coercion. State v. Harvill, 403 So.2d 706 (La.1981); State v. Moseley, 587 So.2d 46, 50 (La.App. 2d Cir.1991), writ denied.
Neither showing has been made here. Johnson had twice been informed of and validly waived his Miranda rights within 4-5 hours before he gave the 1:10 p.m. statement on January 9, 1990, first at 8:30 a.m. at his residence, and again at 9:30 a.m. at the police station. Although Johnson remained in police custody until he was formally arrested after giving the 1:45 p.m. taped statement, he did not request a lawyer at any time during the day. There is no evidence of police coercion that would have vitiated Johnson's prior waivers of his rights. On this record, we do not disturb the trial court's finding that Statement # 3 *795 was voluntary. See and compare State v. Harvill and State v. Moseley, both cited supra.
Statement #4. At 1:45 p.m., Johnson gave a tape-recorded statement in the presence of Inspector Kavanaugh and Investigator Carter. In this statement, Johnson said that he had had consensual sex with the victim in her car on a country road going toward Choudrant on Saturday, December 30, and not on Tuesday, January 2 or Friday, December 29, as he had said in Statement # 3. Johnson said in Statement # 4 that he went to the victim's apartment before they had sex in the car. This was consistent with his modified Statement # 3, but contrary to his original explanation in Statement # 3 that he met the victim in a retail store.
In the taped statement, Johnson said he had a knife with him when he was with the victim on December 30 but denied that he raped or otherwise harmed her. Johnson's description of the knife matched the victim's description of the assailant's knife as well as the knife police found when they searched Johnson's home.
The victim had reported to police that the assailant took $5 from her purse after he raped her in her apartment and before he drove her to a deserted area where he again raped her in her car. In the taped statement, Johnson said the victim drove him to his home and gave him $5 from her purse after they had sex in her car.
Johnson objected to Statement #4 as involuntary because Inspector Kavanaugh did not advise him, on the tape, that the statement was being recorded. We know of no requirement in the law that such advice be given to one who is given Miranda warnings and then waives those rights. The trial court overruled the objection, finding that Johnson was aware that the statement was being taped. Kavanaugh testified that he told Johnson the statement would be recorded before the tape recorder was turned on; that the tape recorder was in plain view on the table where Kavanaugh, Carter and Johnson were sitting; that Johnson saw Kavanaugh put the tape in the recorder and turn it on; that Johnson was again advised of and waived his Miranda rights on the tape; and that Johnson initialed the label on the tape when Kavanaugh removed it from the tape recorder after the statement was concluded.
The tape was played to the jury after the objection was overruled. On the tape, Kavanaugh said, "the place of this recording is the Lincoln Parish Detention Center."
Johnson argues in brief that Statement # 4 should not have been admitted because "it was clearly shown at trial that [he] was not informed of the fact that his conversation with Cecil Carter and Jay Kavanaugh was recorded, even though he apparently gave his consent in conversation with the two."
The record in no way suggests that Johnson's recorded statement was not voluntary. The evidence fully supports the trial court's findings that Johnson was aware that the statement was being recorded and that he gave the recorded statement freely and voluntarily. We do not disturb these findings. State v. Benoit, supra.
On appeal and for the first time, Johnson argues that "it was also his right to be informed that that statement was being recorded for the purpose to be used against him as evidence that he committed the crime." Johnson does not give us the "source" of his alleged "right." In any event, Johnson's only objection to the statement at trial was based on his ill-founded contention that he was not advised, on the tape, of the fact that the statement was being recorded. While we do not ordinarily review on appeal a new ground for the objection that was not asserted in the trial court (CCrP Art. 841; State v. O'Neal, 501 So.2d 920 (La.App. 2d Cir.1987), writ denied), we find no error.

OTHER OBJECTIONS
Johnson complains of two other rulings on his objections at trial, one concerning the testimony of Investigator Carter and the other concerning the victim's testimony.

*796 Carter's Testimony

Carter was present with Inspector Kavanaugh when Johnson gave Statement # 4 at about 1:45 p.m. on January 9, 1990. Carter had questioned Johnson about two hours earlier, at about 11:30 a.m., between the time of Johnson's Statement # 2 at 9:30 a.m. and Statement # 3 at 1:10 p.m. The substance of the 11:30 statement was essentially the same as Statement # 2, in which Johnson said he had seen the victim only once, on December 28, 1989, when she declined Dexter Johnson's offer to wash her car. The state did not offer the 11:30 statement in evidence and did not call Carter as a witness.
Johnson called Carter as a defense witness and asked him about his repeated references to the rape victim as a "white girl" when he questioned Johnson, a black man, in the 11:30 statement. Carter testified that Johnson denied committing the rape in that statement.
On cross-examination, Carter testified that Johnson "changed his story" after the 11:30 statement by admitting in Statement # 4 that he had seen the victim again after December 28. Johnson objected to the testimony as repetitious because the entire Statement # 4 had already been played to the jury on tape. The trial court overruled the objection, noting that the witness was on cross-examination. The prosecutor then asked Carter five more questions about Statement # 4, eliciting the increasing similarities between Johnson's statements and the details of the offense.
Johnson contends his objection should have been sustained because Carter's testimony repeated evidence that the jury had already heard on the tape. We cannot agree.
A witness may be cross-examined on "any matter relevant to any issue in the case, including credibility." LCE Art. 611 B. Carter was present with Inspector Kavanaugh when Johnson gave Statement # 4 and knew of the discrepancies between that statement and Johnson's 11:30 statement, which was made only to Carter. Evidence of the 11:30 statement was first presented by Johnson, not by the state. While Carter's testimony was not the first account of discrepancies in Johnson's statements that the jury had heard, it was brief and within the scope of permissible cross-examination. We find no abuse of the trial court's discretion in allowing Carter's testimony. See and compare State v. Bennett, 454 So.2d 1165, 1182 (La.App. 1st Cir.1984), writ denied, and State v. Hardeman, 467 So.2d 1163, 1169 (La.App. 2d Cir.1985).

The Victim's Testimony
On the day of the offense, the victim gave two statements to police, the first to Officer Holmstead and the second to Inspector Hermes. In both statements, she said her assailant was about 5'5" or 5'6" tall. Johnson is six feet tall; the victim's height is 5'4".
The victim testified that her assailant was "quite a bit taller" than she was. On cross-examination, she was asked about her second statement to the police (the Hermes statement) and admitted that her description of his height in that statement was incorrect. Johnson's attorney then asked the victim to read to the jury a portion of her first statement (the Holmstead statement). The prosecutor objected because the witness had not yet been asked whether she made the statements that defense counsel asked her to read. The trial court sustained the objection, directing defense counsel to first ask the witness if she made the statements. The witness admitted that she reported the assailant's height incorrectly in the Holmstead statement and said this was simply a mistake on her part.
Johnson's argument that the trial court's ruling on the objection was erroneous is answered by LCE Art. 613, which allows extrinsic evidence of a prior inconsistent statement only when the witness denies making the prior statement. The witness here admitted making the prior statement and explained that it was incorrect. Under these circumstances, extrinsic evidence of the prior statement was inadmissible. See and compare State v. Taylor, 593 So.2d 431 (La.App. 2d Cir.1992).

*797 DECREE
Johnson's conviction is AFFIRMED.
NOTES
[1] The state's contention that Johnson cannot complain of this ruling because he did not use all of his peremptory challenges is founded on case law applying the pre-1983 language of CCrP Art. 800 A. Under the amended article, the defendant may obtain review of the trial court's denial of his challenge for cause by objecting to the trial court's ruling and stating the grounds for the objection, which Johnson did. See and compare State v. Haynes, 514 So.2d 1206, 1211 (La.App. 2d Cir.1987) and State v. Young, 569 So.2d 570, 584 (La.App. 1st Cir. 1990), writ denied.

An erroneous ruling, however, is not necessarily grounds for reversal. The error may be deemed harmless if it does not prejudice or affect substantial rights of the accused. CCrP Art. 921; State v. Vanderpool, 493 So.2d 574 (La. 1986); State v. Burge, 498 So.2d 196, 204 (La.App. 1st Cir.1986). As explained in Vanderpool, the fact that the defendant did not use all of his peremptory challenges is one of several factors to be considered in the harmless error analysis.