688 So.2d 1250 (1997)
STATE of Louisiana, Appellee,
v.
Cornell F. BOYKIN, Appellant.
No. 29141-KA.
Court of Appeal of Louisiana, Second Circuit.
January 31, 1997.
Rehearing Denied February 20, 1997.
*1251 John M. Lawrence, Shreveport, for Appellant.
Richard P. Ieyoub, Attorney General, Paul J. Carmouche, District Attorney, John D. Mosely, Jr., Assistant District Attorney, for Appellee.
Before MARVIN, C.J., and HIGHTOWER and WILLIAMS, JJ.
WILLIAMS, Judge.
The defendant, Cornell Boykin, was charged by bill of information with one count of distribution of cocaine, a violation of LSA-R.S. 40:967. A jury convicted the defendant as charged. The trial court adjudicated defendant a second felony offender and sentenced him to serve twenty years imprisonment at hard labor, to run consecutively to a sentence imposed in a prior case. Defendant timely filed motions for new trial, for post-verdict judgment of acquittal, to quash the habitual offender bill, and to reconsider sentence, all of which the trial court denied. He now appeals his conviction and sentence. For the reasons assigned below, we affirm the defendant's conviction, vacate his habitual offender adjudication and sentence, and remand for further proceedings.

*1252 FACTS
On November 8, 1994, the Street Level Interdiction Unit of the Shreveport Police Department ("SPD") conducted a "buy-bust" narcotics sting operation in the Cedar Grove area of Shreveport. Officer Greg Washam testified that on the night in question, he was a passenger in an unmarked vehicle driven by Officer Christopher Hays.[1] As the officers proceeded down Fuller Street, the defendant waved to them from the front yard of 428 Fuller and motioned for them to stop. Officer Washam recognized the defendant as Cornell Boykin from a previous meeting. The defendant walked up to the curb and asked what the officers needed. Officer Washam responded "two." The officer testified that the defendant reached into his right front pants pocket and pulled out two items. The officer could not see what the items were initially, but when the defendant placed the items in the officer's hand, the officer recognized that they were rocks of suspected crack cocaine. Officer Washam gave the defendant two ten-dollar bills of SPD "buy money" that had been previously photocopied and treated with an ultraviolet powder that would mark the hands of any person who had held the money.
After the officers left the scene, they radioed the defendant's description to the arrest team and instructed them to intercept the defendant. The defendant had walked back into the house by the time the arrest team made its first approach, so Officers Hays and Washam drove back to 428 Fuller Street. Officer Hays got out of the car and walked toward the yard at which time the defendant walked back out onto the porch of the house to meet the officer. The arrest team then arrived and started to approach the defendant who ran back into the house. The arresting officers chased the defendant into the house and apprehended him. At some point during the arrest, someone in the house threw a plate out of a window. Officer Kelly Phender recovered the plate, placed it in a plastic bag, marked it with her name and the date of recovery, and stored it in the SPD property room. The plate was later tested and was positive for cocaine residue.
While the arrest team was apprehending the defendant, Officer Washam conducted a field test and determined that the substance the defendant had given him was cocaine. The officer discarded the test kit, but put the cocaine into a sealed plastic bag marked with his initials, and later placed the cocaine in the SPD property room to be transported to the laboratory for analysis. Shortly after the arrest team apprehended the defendant, Officers Hays and Washam identified the defendant as the person who had sold them the crack cocaine. Officer John Youngblood, the arresting officer, testified that he recovered the "buy" money from the defendant's person and identified the money recovered as that which had been photocopied prior to the "buy-bust" operation. The officers did not conduct an ultraviolet residue test on the defendant. Officer Youngblood testified that he did not observe anyone in the house other than the defendant and law enforcement officers.
Carla Pettis, an evidence technician at the North Louisiana Crime Laboratory, testified that the laboratory records showed that she received the rocks of suspected cocaine and the plate from Officer Rodney Price for testing. She identified the items. Pettis also testified regarding the laboratory's standard procedures for receiving and labeling evidence, and stated that according to laboratory documentation, the rocks and plate appeared to have been received, labeled, and stored according to standard laboratory procedures.
Randall Robilliard, a chemist at the crime laboratory, also identified the rocks of cocaine and plate. He stated that he analyzed the rocks and the residue found on the plate and that both tested positive for cocaine. Robilliard testified regarding the specifics of the tests he performed on the evidence, and corroborated Pettis' testimony regarding the laboratory's standard procedures for receiving, labeling, and storing evidence.
The defendant took the stand and denied that he sold drugs to the officers or threw the plate out of the window. He admitted that he spoke to the officers at the curb but *1253 said that they left after he told them that he did not sell cocaine. The defendant also testified that he was wearing the same sweatpants that he wore on the night of his arrest and showed the jury that his pants had no pockets. He said the house where he was arrested was "a known dope house" but that he was just there talking with a young woman and had nothing to do with selling drugs.
After listening to the testimony, the jury found the defendant guilty as charged. The state then filed an amended bill of information charging the defendant as a second felony offender under LSA-R.S. 15:529.1. The defendant filed a motion to quash this bill, which the state subsequently amended. In response to the state's amended bill, the defendant filed another motion to quash the bill of information. After a hearing, at which the state made further oral amendments, the trial court denied defendant's motion to quash and adjudicated him a second felony offender. The defendant also filed motions for new trial, for post-verdict judgment of acquittal, and a motion to reconsider sentence, all of which the trial court denied. He now appeals.

DISCUSSION

Assignment of Error No. 1:
(Admissibility of cocaine seized from the defendant's residence)

Assignment of Error No. 4:
(Denial of defendant's motion for post-verdict judgment of acquittal)
By these assignments of error, the defendant contends that the evidence against him, viewed in the light most favorable to the state, is insufficient to support the guilty verdict because: (1) "the testimony of the undercover officer was not corroborated regarding an actual sale of cocaine" and (2) "the chain of custody was not shown properly to introduce the evidence." These arguments lack merit.
Under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the proper standard of appellate review for a sufficiency of evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Bellamy, 599 So.2d 326 (La. App. 2d Cir.), writ denied, 605 So.2d 1089 (1992). In his first argument, defendant seems to argue that there was insufficient evidence of a drug sale, so the seizure of the cocaine was without probable cause and was thus inadmissible. This court has held that the testimony of a single police officer that he purchased drugs from a defendant is sufficient to sustain a conviction for distribution. State v. Thompson, 27,543 (La.App. 2d Cir. 12/6/95), 665 So.2d 686, 690; State v. Daniels, 607 So.2d 620 (La.App. 2d Cir. 1992). Officer Washam's testimony is uncontradicted by physical evidence, and is only uncorroborated because the other officer in the car at the time of the sale, Officer Hays, died before the commencement of trial. Officer Washam's testimony proved every essential element of the crime of distribution of cocaine, and proved the identity of the defendant as the seller of the cocaine. This evidence is therefore sufficient to prove an actual drug sale by the defendant, and thus, the defendant cannot assert that the officers should not have arrested him.
The defendant's related assignment of errorthat the court erred by admitting the cocaine evidence that the officers seized without probable causeis really a challenge to the chain of custody rather than to the constitutionality of the seizure itself. The state correctly points out that the defendant did not file a motion to suppress the evidence, which is the procedure necessary to preserve a Fourth Amendment claim. La. C.Cr.P. Art. 703(F); State v. Lewis, 468 So.2d 557 (La.1985). State v. Brogdon, 426 So.2d 158, 169-170 (La.1983); State v. Johnson, 595 So.2d 789 (La.App. 2d Cir.1992). However, the defendant objected to the admissibility of the cocaine evidence on the grounds that the state had failed to prove the chain of custody; the evidence was admitted over the objection. The basic requirement for the introduction of demonstrative evidence is to show that more probably than not, the object is what it purports to be. LSA-C.E. art. 901(A); State v. Jackson, 550 So.2d 680 (La.App. 2d Cir.1989). The lack of *1254 positive identification or a defect in the chain of custody goes to the weight of the evidence and not to its admissibility when the preponderance of evidence standard has been met. State v. Mills, 505 So.2d 933 (La.App. 2d Cir.1987), writ denied, 508 So.2d 65 (La. 1987).
In the present case, the testimony of the police officers and the crime lab technicians established that the evidence identified at trial was more likely than not the evidence recovered during defendant's arrest. Officer Kelly Phender identified the plate she recovered and identified her markings on the plastic bag containing the plate. She also testified that she placed the plate in the SPD property room to be transported to the crime laboratory. Officer Washam identified the cocaine as the substance he bought from the defendant and later placed in the SPD property room, and he identified his initials and handwriting on the plastic bag containing the rocks of cocaine. The officer also testified that to his knowledge, Officer Rodney Price was responsible for taking the evidence from the police station to the crime laboratory. Carla Pettis, the laboratory technician, identified the rocks of cocaine and the plate and testified that she received the evidence from Officer Price on November 14, 1994. Pettis testified that all paperwork confirmed that she received, labeled, and stored the evidence according to the laboratory's standard operating procedures. Randall Robilliard, the laboratory chemist, corroborated Pettis' testimony concerning the receipt and storage of the evidence. Robilliard also testified regarding the procedures he used to analyze the evidence.
The above testimony establishes the chain of custody by a preponderance of the evidence. Therefore, the absence of a "perfect" chain goes to the weight, and not the admissibility, of the evidence. We find no error in the trial court's ruling as to the admissibility of this evidence.

Assignment of Error No. 2:
(Sustention of prosecutor's objections during defendant's closing argument)

Assignment of Error No. 3:
(Denial of motion for a new trial)
By these assignments, defendant argues that the trial court's sustention of the prosecution's objections to his argument relating to the sufficiency of the evidence and to the probable cause for the arrest was a denial of the right to present a defense. This argument lacks merit.
In closing argument, defendant focused on the adequacy of the state's proofspecifically, the proof that the drug sale happened the way that Officer Washam said that it happened. Defense counsel strenuously argued that the officer's testimony was uncorroborated by that of other officers, a surveillance recording, or the results of the field drug test. He also urged that, contrary to the officer's testimony, defendant's pants had no pockets. Defense counsel then said:
You have a situation where the police are out in the field and they don't use a search warrant, they don't use an arrest warrant. They're out there in this roving truck and when they decide to come into a house they just go in. And it's likethose decisions are supposed to be made by magistrates or judges based on probable cause. That's what the Constitution says. And these field incidents are situations that should be corroborated by sufficient proof beyond a reasonable doubt, not just because an officer says that they have somebody who has a background and he did something, therefore believe everything that they say.
The state objected to part of this argument:
At this time I will object to the defense arguing whether or not the police had probable cause to make an arrest on this defendant. That is a legal issue for the Court to decide, which any argument should have been had some time ago and it's already decided that is a [sic] legal. I think that's misleading to the jury.
The court sustained this objection, stating:
The objection is sustained and I will ask the jury to disregard that argument in that area.
Defendant objected to the limitation on his closing argument. He unsuccessfully raised the issue again in his motion for new trial.
*1255 Although a trial judge must respect the important role that closing argument plays in the criminal trial, he has great latitude in controlling the duration and scope of that argument. State v. Washington, 614 So.2d 711, 713 (La.1993). Nevertheless, defense counsel should be allowed a wide latitude in closing argument, and any undue restriction which limits argument to the prejudice of the defense is error. Where the prejudice is substantial, reversal is warranted. State v. Burrell, 561 So.2d 692, 704 (La.1990), cert. denied, 498 U.S. 1074, 111 S.Ct. 799, 112 L.Ed.2d 861 (1991).
In this case, counsel has shown neither error nor prejudice. As the state correctly argues, the issue of probable cause for arrest is a legal matter for the judge to decide, not a factual question for the jury. Allowing defense counsel to raise the question of whether the officers had the right to arrest the defendant without a warrant would pose a substantial risk of confusing the jury with issues irrelevant to the defendant's guilt or innocence of the offense. In brief, defense counsel argues that, in his closing argument, he attempted to show that the absence of an arrest warrant was due to the officers' lack of proof that the defendant committed the instant offense. However, whether the officers had enough proof to make an arrest is not an issue for the jury but an issue for the trial judge. Thus, the trial court was correct in sustaining the prosecution's objections, and the defendant's motion for a new trial on this ground was properly denied.

Supplemental Assignment of Error No. 1:
(Admissibility of police reports into evidence)
By this supplemental assignment of error, the defendant challenges the trial court's refusal to allow certain police reports into evidence. He argues the trial court's ruling on the admissibility of this evidence violated his right to present a defense. This assignment of error lacks merit.
In response to defense counsel's questioning, Officer Washam testified that the officers had treated the "buy" money in this case with fluorescent powder to help prove that the drug dealer had touched the money. The buy money, which serial numbers matched copies previously made by SPD, was recovered from the defendant. However, none of the officers testified that the defendant's hands had been examined for the presence of the ultraviolet powder; the consensus was that the officers did not know whether such an examination had been performed.
The defendant testified that the two ten-dollar bills found near him did not belong to him, and that no one had ever tested his hands for the powder with which the bills were treated. On cross-examination, the prosecutor asked the defendant a series of questions about how he knew the money had been treated with fluorescent powder. The defendant said that he had read that information on "some type of form" and denied that he knew about the powder "from experience." On redirect examination, defense counsel attempted to show the defendant a document, presumably the police report with information about the powder. The prosecutor objected on the grounds that the report was "not any evidence in connection with this case." The court agreed, indicating that the defendant had already given hearsay testimony regarding the report and that while the report was not admissible, the defense could call the officer to testify. The following exchange then occurred:
Defense counsel: I don't want to put the paper in. I want to show himthe question was how did he know.
Court: He said it was on the paper.
Defense counsel: That is [sic] was on the paper.
Court: And I think he said it in front of the jury.
Defense counsel: And I wanted him to read to the jury these three lines.
Court: I understand and I think it's improper. I think we've allowed him to answer the question, he said it was on a piece of paper but the paper certainly doesn't have any basis to be introduced.
Defense counsel: I don't want to introduce the paper.
Court: It doesn't matter. I think he's answered the question.

*1256 Defense counsel: Let me note my objection then to the court's ruling. What I intended to do was to show him this to allow the jury to see that there was a basis for him to answer that question in the way that he did.
Court: I understand. And in addition I believe you asked the question of the police officer so that matter is before the jury anyway.
The court noted that the police report did not contain any statements that were inconsistent with the officers' testimony. The defendant was permitted to offer the report as a proffer. After the jury was returned to the courtroom, the following exchange between defense counsel and the defendant took place:
Q: Mr. Boykin, how did it come to be that you knew about the allegation that fluorescent powder was supposed to be on the buy money?
A: On the police report, a copy of the police report that my attorney issued me, Mr. Lawrence, that I read.
Q: You got a copy of that?
A: Yes, sir.
Defendant argues in his brief that the evidence he sought to introduce was relevant and "constituted the basis of a reasonable doubt as to whether the `buy money' was ever exchanged between the undercover police officer and the defendant as referred to in the police reports." The proffered document is not included in the exhibits before this court. However, one of the police reports in discovery does contain the following sentence:
On 11-8-94 at approximately 1915 hours this uc buy unit went to the location of 428 Fuller street in an attempt to purchase illegal narcotics with recorded SPD buy money, that was treated with (sic) fluorescent powder.
At trial, defense counsel stated that he merely wanted to "show" the defendant the document containing information about fluorescent powder and have him read the information to the jury; counsel specifically indicated that he did not want to introduce this document into evidence.
According to LSA-C.E. Art. 803(8)(b)(I), investigative police reports are inadmissible hearsay. Thus, the trial court correctly ruled that the defendant would not be allowed to read from a police report. Moreover, as the court noted, the officers who testified about the powder simply did not know whether the defendant had been tested; the report says nothing different which would warrant using the report for a credibility challenge.
Further, the information contained in the report concerning fluorescent powder is hardly exculpatory; the money was found on defendant's person and it matched the police photocopies. Additionally, although the police report itself was inadmissible, the court gave the defendant extensive leeway in testifying that he knew about the fluorescent powder from the report. Because the police report was inadmissible, the court's refusal to allow the defendant to read from the unidentified report was legally correct. This assignment of error is without merit.

Assignment of Error No. 5:
(Denial of defendant's motion to quash amended second habitual offender bill of information)

Assignment of Error No. 6:
(Defendant's adjudication as a second-felony offender)
The defendant contends that his adjudication as a second-felony offender was based on the unconstitutional application of an ex post facto cleansing period to his prior conviction, and was thus error. We disagree.
Defendant has at least one prior conviction. He pled guilty to one count of simple robbery on June 22, 1987, admitting that he snatched a woman's purse on or about January 23, 1987. The defendant was sentenced to serve one year imprisonment at hard labor, consecutive to any other sentence. The instant record also contains minutes, a bill of information and a sentencing transcript from a February 24, 1987 conviction for unauthorized entry of a place of business. In that case, a Cornell Boykin was sentenced to serve three years imprisonment at hard labor.
*1257 After the defendant was convicted of the instant offense, the state filed a bill charging the defendant as a second (habitual) offender under LSA-R.S. 15:529.1. This bill charged that the defendant had committed the simple robbery on February 6, 1987 and urged that a "cleansing period" of seven years had not passed between the completion of the defendant's sentence in that case and the commission of the instant offense. The defendant filed a motion to quash this bill, urging, inter alia, that the application of the seven-year cleansing period was improper and that the Boykinization under the prior offense was faulty.
The state then filed an amended habitual offender bill, correctly citing the date of the commission of the prior simple robbery as January 23, 1987, but incorrectly stating the sentence as three years at hard labor rather than the actual sentence of one year at hard labor. The amended bill also alleged that a ten-year cleansing period had not passed between the relevant dates. The defendant filed an extensive motion to quash this bill, urging that the application of the ten-year cleansing period was improper. At the habitual offender hearing, the court heard argument on the issues raised by the defendant and, after allowing the state to orally amend the habitual bill to reflect a one-year sentence and seven-year cleansing period,[2] denied the motion to quash. The trial judge ruled that the application of the seven-year cleansing period to these facts was analogous to the extension of those periods under the driving while intoxicated law and held that, like the driving while intoxicated laws, the extension was proper. We agree with the trial court's analogy.
In State v. Rolen, 95-0347 (La. 9/15/95), 662 So.2d 446, the supreme court affirmed the multiple-offense driving while intoxicated conviction of a woman whose prior conviction had occurred more than five but less than ten years prior to the adoption of the ten-year driving while intoxicated cleansing period. In rejecting the defendant's ex post facto challenge, the court stated:
[Unlike statutes of limitation,] [c]leansing periods are ... purely statutory rules constituting self-imposed restraints on the state's plenary power to define and punish crimes. Due process does not require them and several Louisiana repeat offender statutes do not have them. [Citations omitted.] Enlarging or even eliminating a statutory cleansing period does not require an individual to defend his past acts charged against him, for which he has already been convicted and punished, but to measure his future conduct in light of the legislature's changing perception of significant social problems.
As the court in Rolen further recognized, the social problems arising from multiple driving while intoxicated offenders have been well documented. State v. Rolen, supra at 449. Similarly, the societal costs of habitual criminal offenders are well known. Because the extended cleansing period does not increase the punishment for an offense after a defendant commits a crime, it is not an ex post facto application of law, nor is the extended cleansing period fundamentally unfair when applied to the defendant.
While we disagree with defendant's contention that his adjudication as a second-felony offender was based on the unconstitutional application of an ex post facto cleansing period, we do note an error patent regarding the defendant's adjudication as a second felony offender. Thus, we vacate defendant's sentence and his adjudication as a habitual offender, and we remand to the trial court for further proceedings.
At the time the defendant was convicted, LSA-R.S 15:529.1(c) provided that the habitual offender statute was inapplicable in cases where more than seven years had elapsed since the expiration of a defendant's maximum sentence for a prior conviction and the time of the commission of the defendant's last felony. This "cleansing period" begins to run from the date that a defendant is actually discharged from state custody and supervision. State v. Anderson, 349 So.2d 311 (La.1977); State v. Metoyer, 612 So.2d 755 (La.App. 5th Cir.1992). The state has *1258 the burden of proving the date of defendant's discharge from state supervision. See State v. Lorio, 94,2591 (La.App. 4th Cir. 9/28/95), 662 So.2d 128. Where a defendant has been adjudicated a habitual offender, the state's failure to prove the defendant's date of discharge and thus prove that the "cleansing period" has not expired is error patent on the face of the record. See State v. Bullock, 311 So.2d 242 (La.1975); see also State v. Baker, 452 So.2d 737 (La.App. 1st Cir.1984).
There is no evidence in the record before us showing the defendant's release date from state supervision for his simple robbery conviction. At the habitual offender hearing, the state did not provide any documentation of defendant's discharge, but merely stated the date of defendant's prior conviction and stated that the "cleansing period" commenced one year from the date of conviction. Since there is no evidence in the record of defendant's discharge from prison for his prior felony conviction, the habitual offender adjudication and sentence is vacated and the case remanded for further proceedings.
Defendant also assigns as error the trial court's denial of his motion to reconsider sentence. However, because defendant's habitual offender adjudication and sentence is hereby vacated, we pretermit discussion of that assignment.
We have further examined the record for error patent pursuant to LSA-C.Cr.P. Art. 920(2) and found none.

CONCLUSION
For the foregoing reasons, the defendant's conviction is affirmed. The adjudication of defendant as a second felony offender and his sentence of twenty years imprisonment at hard labor are vacated. The case is remanded for further proceedings.

CONVICTION AFFIRMED; HABITUAL OFFENDER ADJUDICATION AND SENTENCE VACATED; CASE REMANDED.
HIGHTOWER, J., concurs in part and dissents in part with written reasons.
HIGHTOWER, Judge, concurring in part and dissenting in part.
Both the conviction and sentence should be affirmed.
Although complaining generally that he has been adjudged an habitual offender, defendant does not assign as error the calculation of the cleansing period. Nor is this "error patent," referenced by the majority, discoverable without an inspection of the evidence. See La.C.Cr.P. art. 920.
Indeed, at the habitual offender hearing, defense counsel apparently agreed that, as to the simple robbery conviction, the discharge from Department of Corrections supervision occurred in June 1988. R. Vol. 2, p. 13. Obviously, then, the seven-year period did not elapse prior to the commission of the present offense on November 8, 1994. Beyond that, during the April 1995 trial of the distribution charge at hand, defendant testified that various parole violations caused him to remain on parole until May 1994. R. Vol. 1, pp. 221-222. Cognizance of that earlier testimony could properly be taken by the judge in the multiple offender proceedings. See State v. Jones, 332 So.2d 461 (La.1976).
Of possibly greater import, however, after having seized the calculation issue and reversed the habitual offender adjudication thereon, the majority fails to delineate the contours of the "further proceedings" that will now be acceptable on remand. More pointedly, are there double jeopardy problems lurking should the state proceed with a second habitual offender hearing? As indicated by State v. Langendorfer, 389 So.2d 1271 (La.1980), and its progeny, double jeopardy principles are not involved in a second recidivist hearing; but, compare the decision of the U.S. Supreme Court in Lockhart v. Nelson, 488 U.S. 33, 109 S.Ct. 285, 102 L.Ed.2d 265 (1988).
With the majority neglecting to consider the hazards of double jeopardy in any manner, I am unwilling to join in an uncharted and self-motioned venture reversing the habitual offender adjudication, especially on the record before us.
*1259 I concur in the affirmance of the conviction, but dissent from the reversal of the habitual offender adjudication.
NOTES
[1] Officer Hays died before this trial commenced.
[2] The seven-year period became effective July 7, 1994. Acts 1994, 3rd Ex.Sess., Act 85. The cleansing period was increased to ten years effective August 1995.