756 So.2d 703 (2000)
STATE of Louisiana, Appellee,
v.
Demetrius EASTER, Appellant.
No. 32,940-KA.
Court of Appeal of Louisiana, Second Circuit.
April 7, 2000.
*704 John Michael McDonald, Shreveport, Counsel for Defendant-Appellant.
Richard Ieyoub, Attorney General, Paul J. Carmouche, District Attorney, D. Bruce Dorris, Brian King, Assistant District Attorneys, Counsel for Plaintiff-Appellee.
Before BROWN, CARAWAY and DREW, JJ.
DREW, J.
Charged by amended indictment with second degree murder for the killing of a 13-year-old boy, Demetrius Easter was convicted by a jury and received a sentence of life of imprisonment at hard labor without benefit of probation, parole or suspension of sentence. Although he made nine assignments of error, the defendant on appeal only argued that the trial court erred in improperly limiting the scope of defendant's closing argument and in permitting the entire statement of another participant in the crime to be read to the jury without instructions limiting the weight to be given the statement. Further, Easter asked this court to examine the record for errors patent. For the following reasons, we affirm the conviction and sentence.

FACTS
On May 18, 1997, 13-year-old Demario Jenkins was shot twice from a passing car and died from internal bleeding approximately 50 minutes later, according to the coroner's testimony. The decedent, his brother Derrick Jenkins, Christopher Small and Clayton Edwards were in a park in the Hollywood Heights section of Shreveport. Edwards testified that as the four young men were leaving the park, a gray Cadillac with three guys and two girls approached. The individuals in the Cadillac started "throwing up blood gang signs" at Edwards' group. The Cadillac eventually stopped and the individuals inside kept "throwing up gang signs" and began hollering. Edwards became frightened, shot three shots in the air and ran from the area.
About 45-50 minutes later, the same group of boys was on Haywood street. In addition to the driver, Larry Smith, the occupants of the gray Cadillac were Smith's girlfriend, Rasheika Reed; her sister, Chaka Reed; Demetrius Easter (Papoo); and Addarryl Wesley (Duke). Edwards stated he heard a car traveling fast and then heard some gunshots. Bullets *705 flew past him. Edwards fell backwards and discovered he had been shot in the leg. As he was falling, he saw gun flashes coming out of the window of a gray Cadillac. Estimating he heard some 50 shots, Edwards stated some sounded like they were being fired from a handgun while others sounded like they were from an assault rifle. Edwards was not able to positively identify Easter as one of the men that shot at him. However, he did identify the defendant as one of the men that he had seen earlier in the day in the park. While at the park, he noticed that Easter had a big Afro. After Edwards was shot, he did not see the face of the shooters but observed that someone in the Cadillac had a big Afro.
Christopher Smalls testified that he, Edwards, the victim, Derrick Johnson and a guy who he thought was named Paul Pierce all went to a park in the Hollywood Heights area to play basketball. Smalls noticed that Larry Smith was there with two females. Because he knew Larry Smith, there were no problems while they were all in the park together. However, as Smith was leaving the area in his gray Cadillac, Smith "threw up some gang signs." Smalls testified that he and his friends believed that Smith's group was going to begin shooting so his friend shot and Smalls ran from the area. About 45-60 minutes later, the gray Cadillac approached as his group was walking down Haywood Street. Smalls only got a quick look at the Cadillac because gunshots started coming from the car. At some point, the Cadillac stopped and the gunfire, totaling at least 50 shots, continued. As he fled, Smalls was shot three times. Edwards and Demario Jenkins were also shot. After the shooting, Smalls identified Easter in a photographic line-up as being one of the men that he had seen in the park on the day of the shooting. He also identified Easter as one of the men in the car because of the style of Easter's hair. Smalls testified that he was not able to get a good look at Easter during the shooting because Easter was firing an AK rifle that shot bullets rapidly.
Rasheika Reed testified that on May 18, 1997, her boyfriend, Larry Smith, came to her house with a man she had not met before named Papoo. Rasheika and her sister, Chaka, went with Smith and Papoo to a park where Smith and Papoo played basketball while Rasheika and Chaka sat on Smith's Cadillac and watched. Rasheika noticed some other boys at the other end of the basketball court were spraying gang graffiti. As her group was leaving, Rasheika stated the boys who had been painting the graffiti fired some gunshots at her group. Rasheika's group went to Papoo's house where Papoo obtained something hidden under a towel which he placed in the trunk of Smith's car. A few minutes later, they ran into a friend of Smith's and Papoo's called Duke. After Duke learned what had happened at the park, the group proceeded to Duke's house where Duke went inside and then came out and got into Smith's car.
Smith then drove around to look for the boys from the park. After some time, Papoo and Duke told the girls to get down and then started shooting. According to Rasheika, both Papoo and Duke had guns and the gunfire continued for several minutes. After the shooting, Smith took everyone to their respective houses. During the trial, Rasheika identified Easter as the individual she knew as Papoo.
Chaka Reed's testimony corroborated her sister's account of the shooting. Chaka stated she heard Larry and Papoo talk about how "they were going to go back and get the boys." After Duke joined the group, they discussed "shooting the boys." After the boys were located, Chaka and Rasheika were told to get down. Chaka stated that Papoo and Duke hung out the car windows and fired. Duke had retrieved a black semi-automatic handgun from his house and Papoo was shooting a long gun. At the trial, Chaka identified the defendant as Papoo.
*706 Acknowledging his involvement with the homicide of Demario Jenkins, Larry Smith testified he had pled guilty to manslaughter in relation to the homicide. Smith stated that the defendant who was nicknamed Papoo, the Reed sisters, and he went to the park near Hollywood Heights in his father's gray 1987 Cadillac. While Smith and the defendant played basketball, several young men including the decedent walked onto the basketball court where the decedent and Smith spoke after which play resumed. Sometime later, some young men approached the court and one of them spray painted gang graffiti all over the basketball court. As Smith and his companions were leaving, several of the young men from the graffiti painting group, "threw up some gang signs." In response, Easter yelled at the other group, who shot four or five times. Smith then gave similar testimony about Papoo and Duke obtaining weapons. In Smith's account, he had come to his senses during the search for the boys and decided to leave the area. Smith drove around a street corner and the victims were "right there." Duke fired a .40 caliber handgun and Papoo shot an AK rifle. After the shooting, detectives contacted Rasheika's and Chaka's mother, who called Smith, and he turned himself in to the authorities.
At trial, Larvaris Jenkins testified that he saw his stepbrother, Demario Jenkins, at the park in the Hollywood Heights area about 30 minutes before he heard a number of gunshots. Later, Jenkins was outside when he heard two or three gunshots. A few minutes later, he saw a gray Cadillac drive quickly by his house. About 30 minutes later the gray Cadillac passed by Jenkins' house again and he saw someone put a clip into a gun. He noticed that Larry Smith was in the car and also a guy with a "big `fro." Shortly thereafter, he heard a number of shots. During the trial, Jenkins identified Easter as the man he saw in the Cadillac with the "big `fro." Jenkins also testified that he had previously identified Easter in a photographic line up as one of the men in the car.
On December 2, 1998, Demetrius Easter was charged by amended bill of indictment with second degree murder. On April 14, 1999, a jury trial commenced. The state called nine witnesses including a number of eyewitnesses, two police officers and a coroner. The jury returned an unanimous verdict of guilty and defendant was sentenced to life imprisonment at hard labor without benefit of probation, parole or suspension of sentence. This appeal followed.

DISCUSSION
Assignment of Error # 4: The Honorable Trial Court erred in failing to allow defense counsel to argue in closing argument the injustice of co-defendant pleading to manslaughter and to argue the inference that it would not be fair to convict Demetrius Dewayne Easter of any greater offense.
The trial court prohibited defendant's attorney from directly arguing in his closing that the jury should return a verdict of manslaughter as opposed to second degree murder because Larry Smith was permitted to enter a guilty plea to the charge of manslaughter. Concluding that the argument was an impermissible appeal to sympathy, passion and prejudice, the trial court further found that the argument did not pass the balancing test of La. C.E. art. 404 which provides that relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury. Easter's counsel was not prohibited from discussing Smith's manslaughter conviction as it pertained to Smith's credibility. In closing argument, Easter's counsel discussed the fact that Smith pled guilty to manslaughter and emphasized that Smith testified at this trial because he was trying to get a deal. Additionally, he emphasized the facts that Smith committed manslaughter, pled to manslaughter and would be sentenced for the crime of manslaughter.
*707 Although a trial judge must respect the important role that closing argument plays in a criminal trial, he has great latitude in controlling the duration and scope of closing argument. State v. Washington, 614 So.2d 711 (La.1993); State v. Owens, 30,903 (La.App.2d Cir.9/25/98), 719 So.2d 610, writ denied, 98-2723 (La.2/5/99), 737 So.2d 747. However, defense counsel should be allowed wide latitude in closing argument and undue restrictions which limit closing argument to the prejudice of the defendant is error. In instances where the prejudice is substantial, reversal is warranted. State v. Boykin, 29,141 (La. App.2d Cir.1/31/97), 688 So.2d 1250, citing, State v. Burrell, 561 So.2d 692, 704 (La. 1990), U.S. cert. denied. In the instant case, Easter established neither error nor prejudice.
Argument shall not appeal to prejudice. La. C. Cr. P. art. 774. See also State v. Scott, 31,379 (La.App.2d Cir.10/28/98), 720 So.2d 415, writ denied, 99-0170 (La.5/14/99), 741 So.2d 664. The prohibited argument, that it was unfair to convict Easter of second degree murder because Smith was allowed to plead to manslaughter, was clearly designed to appeal to prejudice. Even assuming, alternatively, that the prohibited argument should have been permitted, Easter failed to establish that his defense was prejudiced by the trial court's ruling to limit his closing argument. A reversal is not warranted unless the defendant established substantial prejudice. State v. Boykin, supra.
Assignment of Error # 8: The Honorable Trial Court erred in allowing the entire statement of Larry Smith to be recited to the jury, particularly where the Trial Court itself noted that it "... was a thin line to walk ..."
During the trial, Easter's counsel attempted to impeach Larry Smith through a line of questioning involving Smith's prior statement to police. As part of this line of questioning, Easter's counsel asserted that Smith had lied to the police during his statement. Easter's counsel also discussed specific facts that he alleged were part of Smith's statement to police.
Later in the trial, the state called Detective Ronnie Grider of the Shreveport Police Department. Over Easter's hearsay objection, Grider testified about the substance of the police statement of Larry Smith which was largely consistent with Smith's trial testimony.
Easter's assertion that Smith's prior police statement is inadmissible hearsay is without merit. La. C.E. art. 801(D), in pertinent part, provides for the admission of the kind of evidence challenged by Easter by defining it as non-hearsay.
D. Statements which are not hearsay. A statement is not hearsay if:
(1) Prior statement by witness. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is:
(b) Consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive;
In State v. Davis, 626 So.2d 800 (La. App. 2d Cir.1993), writ denied, 93-2945 (La.2/25/94), 632 So.2d 762, the defendant attempted to impeach an eyewitness through a line of questioning which involved alleged inconsistencies between her police statement and her trial testimony. After the cross-examination of the eyewitness, a police officer offered testimony about the police statement of the eyewitness. Applying La. C.E. art. 801, this court found that the prior police statement was admissible. In the instant case, Easter's counsel cross-examined Smith concerning the statement alleging that Smith's trial testimony differed from his police statement. The admission of the testimony concerning Smith's police statement was not error.
Although in appellate brief, Easter grouped his ninth assignment of error with his listing and argument on the foregoing # 8, his brief provides no legal argument or discussion to support Assignment *708 of Error # 9 in which he, alternatively, complained that the trial court erred in not providing substantial limiting instructions as to the weight to be given to the otherwise clearly inadmissible hearsay testimony or in limiting it to not more than was necessary to rehabilitate the witness under C.E. art. 801(D)(1)(b). Easter made no objection at the trial court level concerning the lack of special instruction. Therefore, Assignment of Error # 9 is waived and, without argument, is also abandoned.
Easter did not brief or argue these assignments of error on the denial of his motion for new trial (# 1), on alleged hearsay testimony by Larry Smith (# 2), on the trial court's failure to give a jury instruction on attempt (# 3), and the lack of sufficient evidence to convict (# 5) and on the failure of the circumstantial evidence to exclude every reasonable hypothesis of innocence (# 7). Assignments of error which are neither briefed nor argued are considered abandoned. A mere statement of an assignment of error in a brief does not constitute briefing of the assignment, and, therefore, these assignments are deemed abandoned. State v. Williams, 632 So.2d 351 (La.App. 1st Cir. 1993), writ denied, 94-1009 (La.9/29/94), 643 So.2d 139.
Assignment of Error # 6: All errors patent on the face of the record.
Easter's sixth assignment, a request for this court to review the record for errors patent, is unnecessary since such a review is made automatically in all criminal cases. State v. Bryant, 29,344 (La.App.2d Cir.5/7/97), 694 So.2d 556. Our review of this record revealed no errors patent on the face of the record.

DECREE
The conviction and sentence are affirmed.
AFFIRMED.