I2LOBRANO, Judge.
The defendant, Wayne Johnson, was charged by bill of information with first degree robbery, a violation of La. R.S. 14:64.1. A jury found the defendant guilty of the lesser and included offense of simple robbery. The defendant was adjudicated a third offender, and was sentenced under the “violent offender” provision of La. R.S. 15:529.1 to life imprisonment without benefit of parole, probation or suspension of sentence.
On December 7, 1993, defendant Wayne Johnson walked into the front office of the St. Philip Community Center, which was located in the Desire Housing Project, and was acknowledged by Ms. Dominique Wheeler, a case worker and youth coordinator. Ms. Wheeler was the only person present in the community services office of the Center that day, though there were teachers and students present at the pre-school in an adjoining apartment building. Sister Mary Fran *555 ces Bruns, who operates the Center, was at a meeting, and the secretary was out sick. Ms. Wheeler recognized the defendant, who had worked as a maintenance man at the Center from February to August of 1993 under the name of Wayne Murphy.
The defendant abruptly and repeatedly told Ms. Wheeler to “Get in the back.” She tried to tell him that there was no one in the back offices. Although the ^defendant told her he was not going to hurt her, she decided to do what he said because he was acting “unlike himself,” shouting at her and keeping his right arm behind his back. When they got to the back office belonging to Sister Mary Frances, the defendant ordered Ms. Wheeler to sit down and she complied. Her back was to the defendant when he apparently removed the bottom file drawer, grabbed the zippered bank bags and ran out the door.
When Ms. Wheeler turned around, she saw what the defendant had done, and further saw petty cash receipts and some cash on the floor of the hall. Just after the defendant left, someone else came into the Center and asked her what had happened. She explained that they had just been robbed. She then called the police. Ms. Wheeler advised Detective Justin Crespo, the investigating officer, that she immediately recognized the perpetrator. In fact, during his employment at the Center, Ms. Wheeler and the defendant had shared the use of a company car, picked each other up for work and met each other’s families. When Ms. Wheeler was questioned as to how she could be sure money had been taken, she explained that the Center determined how much was missing when they did a full report of the incident.
From employee records in the name of Wayne Murphy, Ms. Wheeler gave the officer the defendant’s apparent date of birth and an address on Buffalo Street.' Det. Crespo ran the name Wayne Murphy with the address on Buffalo Street in the Driver’s License computer and came up with a social security number and date of birth. He then ran that social security number through the computer and came up with the name Wayne ■Johnson. Based on that information, Det. Crespo compiled a photographic lineup which he presented to Ms. Wheeler at her home that evening. Ms. Wheeler positively identified the photograph of the defendant as the person who committed, the robbery.
| ¿Based on the positive identification by Ms. Wheeler, Det. Crespo obtained an arrest warrant and attempted to execute it at the Buffalo Street address; however, that house was dark and ho one was there. Det. Crespo then sent out a bulletin which listed the outstanding warrant on the National Crime Information Center (NCIC). As a result of that listing, the defendant was subsequently picked up on the warrant.
On January 5,1994, Det. Crespo presented the lineup to Mr. Vernell Dabney, who replaced the defendant as maintenance man at the Center. Dabney was unable to make an identification from the lineup, but explained to Det. Crespo that he was walking towards the building when the perpetrator ran past him, so he saw him for only a few seconds. Det. Crespo testified that the warrant had already been issued prior to the unsuccessful lineup with Mr. Dabney.
Defendant first argues that the evidence was insufficient to support the conviction for simple robbery. In State v. Smith, 94-1502, p. 2 (La.App. 4th Cir 1/19/95), 649 So.2d 1078, 1081, this court set forth the standard for an appellate review of the sufficiency of evidence to support a defendant’s conviction:
The standard for reviewing a claim of insufficient evidence is whether, after viewing the evidence in the light most favorable to the prosecutor, a rational trier of fact could have found the essential elements of the offense proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. at 318-19, 99 S.Ct. at 2789; State v. Rosiere, 488 So.2d 965 (La.1986). The reviewing court is to consider the record as a whole and not just the evidence most favorable to the prosecution; and, if rational triers of fact could disagree as to the interpretation of the evidence, the rational decision to convict should be upheld. State v. Mussall, 523 So.2d 1305 (1988).
When a conviction is based on circumstantial evidence, such evidence must exclude every reasonable hypothesis of innocence. La.Rev.Stat. Ann. § 15:438 (West *556 1992); State v. Camp 446 So.2d 1207 (La.1984). This is not a stricter standard of review, but it is an evidentiary guide for the jury when it considers circumstantial evidence. State v. Porretto, 468 So.2d 1142 5(La.1985). When circumstantial evidence is sufficient to convict beyond a reasonable doubt and a rational trier of fact reasonably rejects the defendant’s hypothesis of innocence, that hypothesis fails; and, unless another hypothesis creates reasonable doubt, the defendant is guilty. State v. Captville, 448 So.2d 676 (La.1984).
Simple robbery is the “taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation. ...” La. R.S. 14:65. The defendant argues that the State did not prove that the defendant took “anything of value,” and that, if he did, that it was under the “immediate control” of Ms. Wheeler. If something was taken, but not by foree or intimidation of a person in its immediate control, then the offense would be theft, which is not a responsive verdict to the charge of first degree robbery. La.C.Cr.P. art. 14:67; La.C.Cr.P. art. 814(A)(23.1).
As to the first issue, Ms. Wheeler testified that she knew how much cash was missing after the incident because she and others “had to do a report.” In addition, Ms. Wheeler had previously testified:
I saw him take the bag and he just went right out the door, up the hallway. When I heard the door close, I got up and then when I went to the hallway all I could see was these square petty cash slips that you write on what you purchase and the amount. They were on the ground, on the floor, rather, with money. So it was white slips and green dollars on the floor.
Even if a rational trier of fact could believe that Sister Mary Frances or someone else had previously taken the cash and failed to account for it, and the defendant accidentally dropped all the cash, he still left with the zippered bank bag. There is no merit to this section of the defendant’s argument.
As to the second issue, the defendant argues that nothing was taken from the person of Ms. Wheeler and that there was no evidence that the cash in Sister Mary Frances’s office was in Ms. Wheeler’s custody or immediate control. Considering | fiSister Mary Frances’s testimony that she knowingly left Ms. Wheeler alone in the Center, and Ms. Wheeler’s testimony that they all kept their office doors open so that they could look in on each other, the trier of fact could find that Ms. Wheeler had the temporary custody and control of everything there. Thus, there is likewise no merit to this section of the defendant’s argument.
The defendant argues that the evidence was insufficient to support his adjudication as a third felony offender. He argues that the identification from the pen pack in case no. 268-238, relative to the defendant’s conviction for armed robbery, was insufficient because the testifying witness neither took the fingerprints nor had custody of them. Documents certified by the warden of a state prison, containing the name of the person imprisoned, photograph and fingerprints of the person, a statement of the court in which the conviction was had, the date of sentence, the length of sentence and the date of discharge, shall be prima facie evidence of the imprisonment and the discharge under the conviction stated and set forth in the certificate. La. R.S. 15:529.1(F).
The pen pack in the instant case is under the name of Wayne Adams, with a notation of his alias “Wayne Johnson.” The record further contains records from the district court, particularly the bill of information and the sentencing minute entry, which link with the pen pack.
As to the fingerprint identification, Officer Keith Arnold, a fingerprint expert, testified that the prints in the pen pack matched the prints of the defendant, taken the morning of the multiple bill hearing.
This assignment is without merit.
The defendant pro se argues four assignments pertaining to his competency to proceed and his dual plea of not guilty and not guilty by reason of insanity. The first 17three assignments argue error by the trial court for failing to afford the defendant a proper determination of his mental status, *557 failing to list “not guilty by reason of insanity” as a responsive verdict and failing to instruct the jury as to the consequences of such a verdict. In the final assignment, defendant argues that he was denied effective assistance of counsel because his counsel failed to investigate his mental history and pursue an insanity defense.
Given this case’s history, consideration of the ineffective assistance claim will render the other assignments moot if meritorious and is thus reviewed first. Generally, the issue of ineffective assistance of counsel is a matter more properly addressed in an application for post conviction relief, filed in the trial court where a full evidentiary hearing can be conducted. State v. Prudholm, 446 So.2d 729 (La.1984); State v. Reed, 483 So.2d 1278 (La.App. 4th Cir.1986). Only if the record discloses sufficient evidence to rule on the merits of the claim do the interests of judicial economy justify consideration of the issue on appeal. State v. Ratcliff, 416 So.2d 528 (La.1982); State v. Garland, 482 So.2d 133 (La.App. 4th Cir.1986).
The defendant’s claim of ineffective assistance of counsel is to be assessed by the two part test of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Fuller, 454 So.2d 119 (La.1984). The defendant must show that counsel’s performance was deficient and that the deficiency prejudiced the defendant. Counsel’s performance is ineffective when it can be shown that he made errors so serious that counsel was not functioning as the “counsel” guaranteed to the defendant by the Sixth Amendment. Strickland, 466 U.S. at 686, 104 S.Ct. at 2064. Counsel’s deficient performance will have prejudiced the defendant if he shows that the errors were so serious as to deprive him of a fair trial. To carry his burden, the defendant “must show that there is a reasonable probability that, but for counsel’s ^unprofessional errors, the result of the proceeding would have been different.” A reasonable probability is a probability sufficient to undermine confidence in the outcome. Strickland, 466 U.S. at 693, 104 S.Ct. at 2068. The defendant must make both showings to prove that counsel was so ineffective as to require reversal. State v. Sparrow, 612 So.2d 191, 199 (La.App. 4th Cir. 1992).
This court has recognized that if an alleged error falls “within the ambit of trial strategy” it does not “establish ineffective assistance of counsel.” State v. Bienemy, 483 So.2d 1105 (La.App. 4th Cir.1986). Moreover, as “opinions may differ on the advisability of a tactic, hindsight is not the proper perspective for judging the competence of counsel’s trial decisions. Neither may an attorney’s level of representation be determined by whether a particular strategy is successful.” State v. Brooks, 505 So.2d 714, 724 (La.1987), cert. denied, Brooks v. Louisiana, 484 U.S. 947, 108 S.Ct. 337, 98 L.Ed.2d 363 (1987).
Despite the notation in the minute entry of May 1, 1996, the docket master entry for that date, and the claims of defense counsel and defendant, the transcript indicates that counsel never entered a dual plea. Rather, counsel brought the possibility of a dual plea to the attention of the court, but maintained the not guilty plea, as follows:
MR. PAPAI (DEFENSE COUNSEL):
Your Honor, insofar as Mr. Johnson’s case is concerned, he informed me this morning that at the time of the offense that he was in Charity Hospital and that also he was under medication during that time and that he wanted to enter a plea of not guilty by reason of insanity.
THE COURT:
And, of course, as we’ve discussed, as you well know, that’s entirely up to you if you feel strategically you wish to do that.
MR. PAPAI:
I just wanted to get it on the record this morning, by our Honor, because this is the very first that I’ve learned of that.
THE COURT:
I understand. But as of now, you leave the plea as it originally was, not guilty?
MR. PAPAI:
That’s correct, your Honor.
THE COURT:
You’ve indicated you’re going to look into this further, and if there’s a need for you to change the plea, you will?
*558 MR. PAPAI:
That’s correct, your Honor.
THE COURT:
Thank you. I appreciate that being placed on the record to protect your interests, as well as those of Mr. Johnson. Thank you, gentlemen. Good luck.
In a conflict between a minute entry and the transcript of a proceeding, the transcript controls. State v. Beard, 547 So.2d 7 (La.App. 4th Cir.1989). Thus, no dual plea was entered on May 1, 1996. In addition, there is no indication that a dual plea was entered on the morning of trial two weeks later, or any time in between. The issue then becomes whether counsel adequately investigated the defendant’s alleged prior mental history, so that his decision not to use an insanity defense was informed trial strategy. When defense counsel’s admitted pre-trial discussion with defendant regarding his sanity is considered along with the victim’s testimony that she knew the defendant and he was “not himself’ at the time of the robbery, it is arguable that counsel’s failure to investigate the defendant’s mental history and pursue an insanity plea, if warranted, may have affected the verdict.
The appeal record is insufficient to determine the adequacy of counsel’s investigation in this matter or his trial strategy. Accordingly, this assignment may lipnot be determined on appeal, but should be raised by application for post conviction relief, filed in the trial court, where a full evidentiary hearing can be conducted.
Of course, where no dual plea was entered, and no motion to appoint a sanity commission was filed, there is no error on the part of the trial judge for failure to conduct a sanity hearing or failure to instruct the jury relative to an insanity verdict.
In a second supplemental brief, the defendant assigns as error his life sentence as a triple offender under the “violent offender” provision of the Habitual Offender Law. The applicable enhancement statute is the one existing at the time of the commission of the offense for which the sentence is to be enhanced. State v. Carr, 96-2388 (La.App. 4th Cir.9/10/97), 699 So.2d 1105, writ denied, 97-2633 (La.2/6/98), 709 So.2d 732. The instant offense was committed on December 7, 1993. On that date, the “violent offender” provision, at La. R.S. 15:529.1(A)(2)(b), provided for life imprisonment “[i]f the third felony and each of the two prior felonies involved a violation of R.S. 14:34 [aggravated battery], R.S. 14:62.1 [simple burglary of a pharmacy], R.S. 14:62.2 [simple burglary of an inhabited dwelling], R.S. 14:62.3 [unauthorized entry of an inhabited dwelling], R.S. 14:65 [simple robbery], R.S. 14:110(B) [simple escape], or of any crime punishable by imprisonment for more than twelve years.”
The defendant’s instant conviction was for simple robbery. The multiple bill hearing transcript indicates that defendant was originally charged as a triple offender with predicate offenses of aggravated battery and armed robbery. Subsequently, the State charged defendant as a quadruple offender with predicate offenses of aggravated battery, possession of cocaine and armed robbery. However, at the multiple bill hearing, the State withdrew the multiple bill charging defendant as a quadruple offender and asked the trial judge to examine the original multiple bill lncharging defendant as a third offender with prior convictions for aggravated battery and armed robbery. The record is unclear as to which of the predicate offenses the trial judge used in his adjudication of defendant as a third offender. Initially, we note that if the quadruple offender multiple bill was withdrawn and the original triple offender multiple bill was reinstated, it is logical to conclude that only the aggravated battery and armed robbery convictions listed in that original bill were used as predicate offenses. Defendant’s adjudication as a third offender could have been upheld if the record was clear that those were the predicate offenses relied on. However, because the record is unclear on that point, we must vacate the multiple offender adjudication and remand for another multiple bill hearing.
Furthermore, even if the possession of cocaine conviction was listed as a predicate offense in the original multiple bill, it could have been used to adjudicate defendant as a triple offender but could not be used as justification for the imposition of a life sen *559 tence under the “violent offender” provision of the Habitual Offender Law. The possession of cocaine conviction was punishable by a maximum of five years. Thus, that conviction did not qualify as a violent offense as set forth in the relevant sentencing statute on the date of the commission of the instant offense. If the trial judge intended to base his adjudication of defendant as a third offender on the aggravated battery and armed robbery convictions, then the life sentence under the “violent offender” provision could have been upheld. However, because we cannot determine which predicate offenses the trial judge used in adjudicating defendant as a third offender, we must vacate the sentence and remand for resentencing.
For the reasons stated above, we affirm the defendant’s conviction. We vacate the multiple bill adjudication and sentence and remand for a multiple bill hearing and resen-tencing.
CONVICTION AFFIRMED; SENTENCE AND MULTIPLE BILL ADJUDICATION VACATED; CASE REMANDED FOR REHEARING ON MULTIPLE BILL.