782 So.2d 662 (2001)
STATE of Louisiana
v.
Carl LEWIS.
No. 2000-KA-0524.
Court of Appeal of Louisiana, Fourth Circuit.
March 7, 2001.
*664 Harry F. Connick, District Attorney, Leslie P. Tullier, Assistant District Attorney, New Orleans, LA, Counsel for Plaintiff/Appellee.
Yvonne L. Hughes, New Orleans, LA, and Christopher A. Aberle, Louisiana Appellate Project, Mandeville, LA, Counsel for Defendant/Appellant.
Court composed of KIRBY, LOVE and GORBATY, Judges.
KIRBY, Judge.

STATEMENT OF THE CASE
On May 31, 1995 the State filed a bill of information charging the defendant with possession of 28 to 200 grams of cocaine. On June 12, 1995 he pleaded not guilty. On June 30, 1995 a motion hearing was held, and the trial court denied the motion to suppress the evidence on July 17, 1995. The defendant filed a writ application in this Court, which was denied with the notation that the defendant had an adequate *665 remedy on appeal. State v. Lewis, 95-1685 unpub. (La.App. 4 Cir. 8/11/95).
The trial was set and reset numerous times. On August 28, 1997 the defendant filed a pro se motion to quash in this Court. This Court denied the writ application and noted that the defendant's eight continuances from September 7, 1995 to August 19, 1997 interrupted the time limitation of La.C.Cr.P. art. 578. State v. Lewis, 97-1905 unpub. (La.App. 9/12/97). On July 27, 1998 the defendant filed a pro se motion to quash in this Court. This Court granted the writ solely to transfer the motion to quash to the trial court for consideration if the case did not go to trial as scheduled on September 9, 1998. State v. Lewis, 98-1855 unpub. (La.App. 4 Cir. 8/17/98).
On September 9, 1998 the trial court denied the motion to quash as moot because trial was being held that day. After a jury trial the defendant was found guilty of possession of cocaine, a violation of La. R.S. 40:967(C)(2). On December 11, 1998 the defendant's motion for a new trial was denied, and the State filed a multiple bill. On February 12, 1999 the multiple bill hearing was held, and the trial court found the defendant to be a third offender and sentenced him to life imprisonment at hard labor without benefit of probation, parole, or suspension of sentence. The trial court denied the defendant's motion to reconsider sentence and granted the defendant's motion for appeal.

STATEMENT OF THE FACTS
At the June 30, 1995 motion to suppress hearing Detective David Lemoine and Detective Reginald Jacques testified. Detective Lemoine stated that on April 18, 1995 he applied for a search warrant for 2722 Banks Street. According to the affidavit in support of the warrant, within seventy-two hours inclusive of April 12, 1995, Detective Lemoine had received a tip from a known informant (who had previously provided information resulting in arrests). The C.I. stated that an unknown black male was using the Banks Street residence as a wholesale outlet for cocaine. The dealer would store the drugs at 2722 Banks Street and then meet customers in front of 414 S. Gayoso Street. The resident of 414 S. Gayoso, identified as "Horace", would first meet the customers, then call the dealer who would arrive at 414 S. Gayoso and conduct the transaction in front of the residence. The C.I. described the dealer's vehicle as a white 1983 GMC truck; the dealer himself was described as a black male, approximately 25-30 years of age, 5' 8" in height, and of medium build. The informant stated that he had purchased retail quantities of cocaine in the manner described within forty-eight hours of speaking to Detective Lemoine.
According to the affidavit, based on the informant's tip and willingness to cooperate, Detective Lemoine planned a controlled buy. Detective Felix Joseph drove the C.I. to 414 S. Gayoso and removed all personal property from him while Detective Lemoine, assisted by Detective Stephen Imbraguglio, placed 2722 Banks Street under surveillance. Detective Joseph watched as the informant knocked on the door of the Gayoso Street house and then went in. The C.I. and a black male came out within minutes and walked to a pay phone on Tulane Avenue. The black male placed a phone call. The two then walked back to 414 S. Gayoso and remained on the sidewalk.
Shortly thereafter, Detectives Imbraguglio and Lemoine saw a black male, who fit the suspected dealer's description, walk from the rear of 2722 Banks Street and enter a white 1983 GMC truck (registered to Lonzy Oney, the defendant's father, who resided at 2722 Banks Street). The suspected dealer was followed to 414 S. Gayoso, *666 where he exited the truck and met with the C.I. on the sidewalk. The C.I. handed the suspect money and received a small object in return.
The dealer then entered the truck and was followed back to 2722 Banks Street. The informant walked to a prearranged meeting place and delivered a piece of crack cocaine to Detective Joseph. The C.I. stated that the cocaine was purchased from the man who had arrived at S. Gayoso shortly after Horace placed the phone call. The C.I. also stated that he had been invited back for future purchases. A preliminary field test was positive for cocaine.
According to the search warrant affidavit, the detectives were unable to follow-up on their investigation until April 18, 1995. On that date Detective Lemoine set up a surveillance of the locations involved. He observed the dealer leave 2722 Banks Street in a red sports car several times, drive to S. Gayoso Street, make a drug transaction in front of the residence, then return to Banks Street. Based on the information received from the C.I., who had made a controlled purchase, and corroborated by the officers' surveillance, Detective Lemoine applied for a search warrant for 2722 Banks Street.
At the hearing Detective Jacques testified that Detective Lemoine made the decision to stop the red sports car being driven by the target of the narcotics investigation and to detain the driver/defendant while a search warrant for the Banks Street address was prepared because the defendant probably could allow the officers entry into the residence. Detective Lemoine had contacted the other detectives. The red sports car had been followed from the area of Banks and Broad to Broadway at South Claiborne where it stopped, for a red light. Detective Jacques, assisted by Detective Chenevert, stopped the car. Detective Jacques (whose car was behind) went up to the car, ordered the driver/defendant out, detained him, and advised him he was under investigation for narcotics violations. The detectives removed the defendant's keys and $102.00 in currency; the defendant's car was driven to the station while other officers transported the defendant.
On cross-examination the detective said that the stop occurred after 6:00 p.m. There was no traffic stop and no arrest warrant. The search warrant had not yet been signed. Approximately thirty minutes after arriving at police headquarters, the defendant was taken to the Banks Street residence where the warrant was executed. The police used the keys taken from the defendant to enter the house. Inside the building at the rear of 2722 Banks Street the officers seized numerous clear plastic bags containing pieces of crack cocaine, papers in the name of the defendant, photos, a scale, a beeper, a razor blade, and a large glass plate. The defendant was then formally placed under arrest.
At trial Detective Lemoine testified that on April 18, 1995 he and Detective Imbraguglio set up surveillance at 2722 Banks Street. He was located on Banks Street and could see the front of the residence. Detective Imbraguglio was positioned in the rear so that he could see any activity back there. There was a small white wooden structure, like an added shed, in back of the residence. Detective Lemoine stated that three times he picked up the defendant as he left 2722 Banks Street in a red sports car and drove to 414 South Gayoso, exited the car, met a subject, conducted what appeared to be a drug transaction (where the defendant would give the subject a small object and receive money in exchange), and then drove back to 2722 Banks Street. He observed three transactions in about one and one-half hours. Detective *667 Imbraguglio remained at the Banks Street location.
Detective Lemoine testified that he applied for a search warrant of 2722 Banks Street. When it was decided that the residence was going to be searched pursuant to a warrant, "we opted to go ahead and conduct a traffic stop on the Defendant in order to have him in hand when we did conduct (sic) the search warrant." Detective Lemoine did not make the stop; he had contacted other officers, who stopped the defendant. He and other officers met and used a key (which he believed was retrieved from the defendant) to enter the residence and conduct a thorough search.
Under a bed the detective discovered a large piece of plate glass with rows of a white compressed substance, which he recognized to be cocaine, and a razor blade. Alongside the glass was a locked box with the defendant's personal papers including a car warranty dated 4/18/95 listing the defendant's name and 2722 Banks Street as his address and a Food Stamp Program form listing the defendant's name and the same address. He also found a big shoe box containing numerous pieces of a white compressed substance wrapped in small plastic sandwich bags. An electronic digital scale was located on top of the dresser.
The officers removed the lock from the door and had taken the key to the door and a pager from the defendant. He identified the defendant's driver's license with 2722 Banks Street listed as his address. The detective said that he also removed several personal photographs found inside the rear structure at 2722 Banks Street, which included the photograph admitted as S-17.
During cross-examination the defense presented two judgments from First City Court against the defendant for failure to pay rent at 412 S. Gayoso Street; the detective conceded that the defendant could have had an address at that location. The defense also produced a W-2 statement, a BellSouth bill, and a Cox Cable bill in the defendant's name at 412 S. Gayoso Street. Detective Lemoine stated that the S. Gayoso address was not searched. Detective Lemoine stated that he did not know who lived in the front blue residence at 2722 Banks Street. Only the defendant appeared to have access to the rear white structure.
Although the detective conceded that he might have testified previously that the defendant was detained pursuant to a traffic stop, he clarified that the defendant was stopped only because of the narcotics investigation. He recalled no traffic violation. Detective Lemoine was not present, but the detective indicated that the defendant was searched and the key taken from him. He did not recall any evidence being seized from the defendant or the defendant's car.
The detective stated that he had a search warrant when he entered the rear building at 2722 Banks Street. He was confronted with his preliminary hearing testimony where he stated that the officers entered the residence and then thirty to forty-five minutes later, he obtained the search warrant. He could not explain why he had so testified before.[1]
*668 Detective Imbraguglio testified that he and Detective Lemoine set up surveillance of 2722 Banks Street on April 18, 1995. He was positioned in front of the residence one time and at the rear of the building another time. He was located down the side of an alley of the school right off Baudin Street and Broad Street; he could see the rear of the residence over the fence. He observed the defendant leave the residence and then later return three times. The defendant used a key to enter. During the execution of the search warrant using a key to enter, Detective Imbraguglio retrieved the electronic digital scale and some photographs that were on top of the dresser. The sergeant identified State's exhibit 17, a photograph of the defendant found on top of the dresser in the bedroom.
On cross-examination the detective stated that he saw only the defendant enter and exit the rear structure. On redirect examination Detective Imbraguglio noted that he and Detective Lemoine put the lock and the key into evidence because control of the residence was to be an issue. On recross-examination he conceded that prints were never taken from the glass seized from the residence.
Detective Reginald Jacques testified that on April 18, 1995 he was asked to follow a subject in a red sports car. The car traveled from Broad and Banks Streets to the uptown area around Garfield, and then back to Broadway at South Claiborne Avenue where the defendant was stopped. Detective Jacques made the stop pursuant to Detective Lemoine's instructions. According to Detective Jacques, he asked the defendant to step out of the car and he complied. The sergeant then advised that the defendant was under investigation for drug trafficking. The officers relocated to police headquarters, a search warrant was issued, and they took the defendant back to Banks Street. Detective Jacques said that he thought the warrant was not ready, and that was the reason for relocating to headquarters. The detective searched the defendant for weapons and found only $102.00 in currency. Detective Jacques relocated the defendant to Banks Street and stood outside with the defendant while other officers conducted the search.
On cross-examination the detective testified that no criminal or traffic violation had occurred when he stopped the defendant. He said that the defendant was detained, not arrested. Another officer drove the defendant's car to the station. Detective Jacques said that he searched only the driver's side of the car for weapons and found no cocaine. He found no cocaine on the defendant's person during the pat-down search. The detective admitted that he stopped the defendant around 6:15 or 6:30 p.m., but the search warrant was not signed until 7:45 p.m. He said that keys were taken from the defendant and turned over to Detective Lemoine, but he did not see the officers' actual entry into the residence.
John Palm, an NOPD criminalist, testified that he received one plastic bag containing numerous smaller plastic bags with each containing two pieces of a rock-like substance, which tested positive for cocaine (about 9 grams). He also received a plastic bag containing numerous pieces of white rock-like substance, which tested positive for cocaine (28.8 grams). The total was about 37 grams of cocaine. On cross-examination Mr. Palm conceded that he did not test every rock-like piece; he tested four pieces randomly selected from each bag. He stated that all the pieces looked alike and appeared to be the same.
The defense called Lonzy Oney, the defendant's father, who lived at 2722 Banks Street. He testified that the police officers *669 broke the lock off of the back apartment and entered. Oney stated that the defendant lived at 412 S. Gayoso (at first he said Salcedo until the State corrected him). Oney said that his daughters, Yolanda and Denise Lewis, and his son, Tyrone Lewis, along with his son-in-law, Harry Johnson, also had access to the rear apartment. On cross-examination Oney said that the defendant had some clothes at 2722 Banks Street. He said that "not very often" did he have contact with the back apartment; he did not know if the defendant had any photos of himself taken in that rear structure. No one was living there in 1995. He identified State's Exhibit 17 as a photograph of the defendant, but said that he did not know whether it was taken in the back apartment. He admitted that the defendant sometimes used his address.
Gertie Oney, the defendant's mother, testified that she lived at 2722 Banks Street and corroborated her husband's testimony that the defendant lived at 412 S. Gayoso and that his siblings had access to the rear apartment. She said that all her children stored things in the rear apartment. She was in her residence when the officers searched the back apartment, but they did not knock on her door or enter her house. On redirect Mrs. Oney said that the officers broke down the door of the rear apartment, but on recross-examination she admitted that she did not see what happened. However, on additional redirect examination she said that she later saw that the door had been "busted in."

ERRORS PATENT
A review of the record shows reveals an error patent relating to the defendant's illegal sentence. The issue will be discussed under counseled assignment of error number 2.

DISCUSSION

COUNSELED ASSIGNMENT OF ERROR NUMBER 3; PRO SE ASSIGNMENT OF ERROR NUMBER 4
The defendant pro se and defense counsel argue that the trial court erred by denying the motion to suppress the evidence. They contend that the evidence seized was the fruit of an illegal detention and search. The defendant pro se argues that there was no probable cause to search 2722 Banks Street because Detective Lemoine did not observe criminal activity at that location.
A trial court's ruling on a motion to suppress the evidence is entitled to great weight because the court observes the witnesses and weighs the credibility of their testimony. State v. Jones, 97-2217, p. 10 (La.App. 4 Cir. 2/24/99), 731 So.2d 389, writ denied, 99-1702 (La.11/5/99), 751 So.2d 234. See also State v. Scull, 93-2360 (La.App. 4 Cir. 6/30/94), 639 So.2d 1239, writ denied 94-2058 (La.11/11/94) 644 So.2d 391. In reviewing a trial court's ruling on a motion to suppress, an appellate court is not limited to evidence adduced at the hearing on the motion to suppress. It may also consider any pertinent evidence given at the trial of the case. State v. Mims, 97-1500 (La.App.6/21/00), 769 So.2d 44; State v. Nogess, 98-0670, p. 11 (La.App. 4 Cir. 3/3/99), 729 So.2d 132.
In State v. Casey, 99-0023 (La.2/6/00), 775 So.2d 1022, cert. denied, ___ U.S. ___, 121 S.Ct. 104, 148 L.Ed.2d 62 (2000) the Louisiana Supreme Court discussed the pertinent law:
A person is constitutionally protected against unreasonable search and seizure of his house, papers and effects. Thus, a search and seizure of such shall only be made upon a warrant issued on probable cause, supported by oath or affirmation, and particularly describing the place to be searched and thing(s) to be *670 seized. U.S. Const. amend. IV; La. Const. art. I, § 5 (1974). The general rule is that probable cause sufficient to issue a search warrant "exists when the facts and circumstances within the affiant's knowledge and of which he has reasonably trustworthy information, are sufficient to support a reasonable belief that an offense has been committed and that evidence or contraband may be found at the place to be searched." La. C.Cr. P. art. 162; State v. Johnson, 408 So.2d 1280, 1283 (La.1982). The issuing magistrate must make a practical, common sense decision whether, given all the circumstances set forth in the affidavit, a fair probability exits that the evidence of a crime will be found in a particular place. State v. Byrd, 568 So.2d 554, 559 (La.1990). Additionally, a search warrant must establish a probable continuing nexus between the place sought to be searched and the property sought to be seized. State v. Weinberg, 364 So.2d 964, 968 (La.1978). Further, an affidavit must contain, within its four corners, the facts establishing the existence of probable cause for issuing the warrant. State v. Duncan, 420 So.2d 1105, 1108 (La.1982).
See also State v. Gereighty, XXXX-XXXX (La. App. 4 Cir. 7/26/00), 775 So.2d 468.
Probable cause exists when "the facts and circumstances within the affiant's knowledge, and those of which he has reasonably trustworthy information, are sufficient to support a reasonable belief that evidence or contraband may be found at the place to be searched." State v. Duncan, 420 So.2d at 1108; State v. Brown, 93-2089 (La.App. 4 Cir. 12/15/94), 647 So.2d 1250, writ denied, 95-0497 (La.12/6/96), 684 So.2d 921. When considering a magistrate's finding of probable cause, the reviewing court must determine whether the "totality of circumstances" set forth in the affidavit is sufficient to allow the magistrate:
to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a reasonable probability that contraband ... will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for ... conclu[ding] that probable cause existed."
Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); See also State v. Isaac, 93-2094 (La.App. 4 Cir. 7/9/94) 639 So.2d 337, writ denied 94-1892 (La.11/29/94) 646 So.2d 398. An exception to the above rule has been created in cases where a law enforcement officer relies in good faith on a magistrate's probable cause determination and the technical sufficiency of the warrant. In those cases, exclusion is not proper. United States v. Leon, 468 U.S. 897, 104 S.Ct. 3430, 82 L.Ed.2d 677 (1984). An affidavit supporting a search warrant is presumed to be valid, and the defendant has the burden of proving that the representations in the affidavit are false. Brown, 647 So.2d at 1253.
The defendant argues that, under the totality of the circumstances, Detective Lemoine's affidavit fails to support a finding of probable cause. The defendant argues that the detective's observations did not show drug activity at 2722 Banks Street. However, Detective Lemoine noted in his affidavit that a reliable C.I. had provided information that the drugs were sold in front of 414 Gayoso Street, but the defendant brought the contraband from the rear structure at 2722 Banks Street, the location where the drugs were kept. The C.I. made a controlled buy during the *671 officers' surveillance of the two locations. Detective Lemoine declared in the affidavit that on April 18, 1995 he observed the defendant leave the Banks Street location, go to the S. Gayoso residence, conduct transactions outside, and then return to the Banks Street location three times. The observations of Detective Lemoine and the other detectives confirmed the C.I.'s information. There was probable cause for the issuance of the search warrant. This pro se argument lacks merit.
Defense counsel and the defendant pro se argue that the police officers lacked reasonable cause to stop the defendant, detain him and then transport him to the station where he was searched. La. C.Cr.P. art. 215.1(A) provides: "A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions." Reasonable suspicion to stop is something less than the probable cause required for an arrest, and the reviewing court must look to the facts and circumstances of each case to determine whether the detaining officer had sufficient facts within his knowledge to justify an infringement of the suspect's rights. State v. Mims, 97-1500, 769 So.2d at 44; State v. Littles, 98-2517 (La.App. 4 Cir. 9/15/99), 742 So.2d 735. In assessing the reasonableness of an investigatory stop, the court must balance the need for the stop against the invasion of privacy that it entails. See State v. Harris, 99-1434 (La.App. 4 Cir. 9/8/99), 744 So.2d 160. The totality of the circumstances must be considered in determining whether reasonable suspicion exists. State v. Mitchell, 97-2774 (La.App. 4 Cir. 2/3/99), 731 So.2d 319. The detaining officers must have knowledge of specific, articulable facts, which, if taken together with rational inferences from those facts, reasonably warrant the stop. State v. Keller, 98-0502 (La.App. 4 Cir. 3/10/99), 732 So.2d 77. In reviewing the totality of the circumstances, the officer's past experience, training and common sense may be considered in determining if his inferences from the facts were reasonable. State v. Williams, 98-3059 (La.App. 4 Cir. 3/3/99), 729 So.2d 142.
Probable cause to arrest exists when the facts and circumstances known to the officer and of which he has reasonably trustworthy information are sufficient to justify a man of ordinary caution in believing that the individual to be arrested has committed a crime. State v. Wilson, 467 So.2d 503 (La.1985), cert. denied Wilson v. Louisiana, 474 U.S. 911, 106 S.Ct. 281, 88 L.Ed.2d 246 (1985). See also State v. Johnson, 94-1170 (La.App. 4 Cir. 8/23/95), 660 So.2d 942, writ denied, State v. Johnson, 95-2331 (La.2/2/96), 666 So.2d 1092, and State v. Dibartolo, 95-3044 (La.2/2/96), 666 So.2d 1105.
Detective Lemoine stated that his reliable C.I. made a controlled buy from the defendant/dealer in front of 414 South Gayoso Street after he arrived with the drugs from 2722 Banks Street. Detective Lemoine set up surveillance at 2722 Banks Street on April 18, 1995. Three times in one and one-half hours the detective watched the defendant leave the white shed in the rear of 2722 Banks Street, drive to the South Gayoso address, exit his vehicle, conduct what appeared to be a drug transaction in front of that house (the defendant gave an object and received money in exchange), and then drive back to the Banks Street location. Based on the C.I.'s information corroborated by a controlled buy and his own personal observations of three drug transactions, Detective Lemoine decided to have the defendant's vehicle stopped while he prepared a search warrant for 2722 Banks Street. *672 Detective Jacques with Detective Chenevert stopped the defendant's red sports car on Broadway at Claiborne Avenue based on Detective Lemoine's information. Detective Lemoine had corroborated the information provided by a known reliable C.I. through surveillance. He had personally observed the defendant conduct three drug transactions. Detective Lemoine wanted to detain the defendant before attempting to execute the warrant at the Banks Street address. The police officers clearly had reasonable cause to stop the defendant and arguably probable cause to arrest him and to obtain the key to the structure behind the residence at 2722 Banks Street.
These assignments lack merit.

PRO SE ASSIGNMENT NUMBER 3
The defendant argues that the trial court erred by allowing into evidence two photographs depicting the defendant throwing money up in the air in front of a bed. The defendant contends that the photographs were irrelevant and their prejudice outweighed their probative value. Only one photograph, S-17, has been provided to this Court, and there was testimony relating to only one such photo.
Photographs are generally admissible if they illustrate any fact, shed any light upon an issue in the case, or are relevant to describe the person, thing or place depicted. State v. Mitchell, 94-2078 (La.5/21/96), 674 So.2d 250., cert. denied, 519 U.S. 1043, 117 S.Ct. 614, 136 L.Ed.2d 538. In State v. Johnson, 94-0236, pp. 7-8 (La.App. 4 Cir. 3/16/95), 652 So.2d 1061, 1067, writ denied, 95-1752 (La.2/21/97), 688 So.2d 524, the court set forth the general rules applicable to photographic evidence as follows:
Photographs which illustrate any fact, shed light upon any fact or issue in the case, or are relevant to describe the person, place, or thing depicted, are generally admissible. State v. Kirkpatrick, 443 So.2d 546 (La.1983), cert. denied, 466 U.S. 993, 104 S.Ct. 2374, 80 L.Ed.2d 847 (1984); State v. Hartman, 388 So.2d 688 (La.1980). The test of admissibility is whether the probative value of the photograph outweighs the possible prejudice which might result from its display to the jury. State v. Moore, 419 So.2d 963 (La.1982); State v. Jones, 381 So.2d 416 (La.1980). Determining the proper use of photographs at trial is generally within the sound discretion of the trial, who can best decide whether they serve a proper place in the jury's enlightenment and its ruling in this respect will not be disturbed in the absence of an abuse of discretion. State v. Kelly, 362 So.2d 1071 (La.1978), cert. denied, 439 U.S. 1118, 99 S.Ct. 1025, 59 L.Ed.2d 77 (1979).
La. C.E. art. 403 allows a court to exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice.
Detective Lemoine testified that he removed several personal photographs from inside the rear structure at 2722 Banks Street. He said that S-17 was one of those photos. It was one of the photos taken from on top of the dresser in the bedroom of the white structure behind the residence at 2722 Banks Street. Later the defendant's father identified S-17 as a photograph of his son, but he testified that he did not know if the picture had been taken inside the white structure behind his 2722 Banks Street residence. The defendant's mother identified him in the picture, but she said that she did not know whether he had photos inside the residence.
The photograph was clearly relevant to show that the defendant had access to and was using the structure and left his personal photos there. The probative value, *673 however, must be weighed against any undue prejudice.
Even if we assume, without deciding, that unfair prejudice outweighed the probative value of the photograph, and the trial court erred in admitting it, the error was harmless. The guilty verdict to the lesser crime of possession of cocaine was not attributable to the admission of that photograph. La.C.Cr.P. art. 921; State v. Brooks, 98-0693 (La.App. 4 Cir. 7/21/99), 758 So.2d 814; State v. Everidge, 96-2665 (La.12/2/97), 702 So.2d 680.
This pro se assignment of error lacks merit.

COUNSELED ASSIGNMENT OF ERROR NUMBER 1
The defendant contends that one of the two predicate felonies used to adjudicate him a third offender, a 1989 guilty plea to two counts of possession with intent to distribute cocaine (334-178), was facially invalid and should not have served as a valid predicate offense notwithstanding counsel's failure to object on those specific grounds. The defendant claims that the waiver of rights form was not signed by the judge, the defendant, or his attorney, and the form failed to properly explain the right against self-incrimination and to set out the mandatory minimum sentences under La.C.Cr.P. art. 556.1.
In its brief the State counters that defense counsel did not object to the Boykinization in the 1989 case at the multiple offender hearing and defendant should not now be allowed to make that argument for the first time on appeal. The State contends that the right against self-incrimination was sufficiently explained on the form, and the mandatory minimum sentence was not a required element of a waiver of rights form.
La. R.S. 15:529.1(D)(1)(b) provides:
Except as otherwise provided in this Subsection, the district attorney shall have the burden of proof beyond a reasonable doubt on any issue of fact. The presumption of regularity of judgment shall be sufficient to meet the original burden of proof. If the person claims that any conviction or adjudication of delinquency alleged is invalid, he shall file a written response to the information. A copy of the response shall be served upon the prosecutor. A person claiming that a conviction or adjudication of delinquency alleged in the information was obtained in violation of the Constitutions of Louisiana or of the United States shall set forth his claim, and the factual basis therefor, with particularity in his response to the information. The person shall have the burden of proof, by a preponderance of the evidence, on any issue of fact raised by the response. Any challenge to a previous conviction or adjudication of delinquency which is not made before sentence is imposed may not thereafter be raised to attack the sentence.
This Court has held that a defendant's oral objection to the use of a prior conviction at the multiple bill hearing preserved the issue for review. State v. Wolfe, 99-0389 (La.App. 4 Cir. 4/19/00), 761 So.2d 596; State v. Alexander, 98-1377 (La.App. 4 Cir. 2/16/00), 753 So.2d 933; State v. Anderson, 97-2587 (La.App. 4 Cir. 11/18/98), 728 So.2d 14. A defendant's argument that the State did not produce sufficient proof of a prior conviction is preserved for appeal if he filed a written response to the multiple bill or orally objected to the prior conviction at the hearing. State v. Washington, 98-0583 (La. App. 4 Cir. 11/17/99), 747 So.2d 1191, writ denied, XXXX-XXXX (La.9/15/00), 768 So.2d 1277; State v. Cossee, 95-2218 (La.App. 4 Cir.7/24/96), 678 So.2d 72.
*674 Here the defendant filed a notice of objections to the multiple bill of information. He generally claimed that the evidence adduced at the hearing failed to meet the Boykin requirements and failed to prove the identity of the defendant beyond a reasonable doubt. He also claimed that the multiple bill was not timely filed. At the beginning of the hearing defense counsel noted that he had filed the written notice of objections.[2]
At the February 12, 1999 multiple bill hearing as proof of the predicate offense at issue, the State presented the bill of information in CDC # 334-178 "A", the waiver of rights form with the defendant's initials next to each right (but no signatures of the defendant, his attorney, or the judge), the docket master, the August 15, 1989 minute entry evidencing the defendant's guilty plea to the charges, the arrest register, and the docket master. At the hearing Officer Glenn Burmaster, a fingerprint expert, testified that he had brought a certified copy of the March 23, 1989 arrest register (relating to 334-178 "A"), which contained fingerprints on the rear of the document.[3] The officer stated that he compared the fingerprints of the 1989 arrest register to the fingerprints he had taken of the defendant that morning; he concluded that the fingerprints were made by the same person. He said that the arrest register in that 1989 case (which he had brought to court) was the same one provided by the State in its bill of information packet. Officer Burmaster testified that he was positive that the individual in the 1989 case was the same person he had fingerprinted earlier that day, the defendant. On cross-examination the officer conceded that there were no fingerprints on the 1989 bill of information. On redirect he stated that the name and the date of birth were the same in the documents relating to the 1989 arrest.
During argument defense counsel stated:
With respect to 374178 [sic], Your Honor, in my opinion, the plea form is good and sufficient as a matter of law. I have reviewed the form in question, and I cannot find a legal objection to it. I believe that that form is legally sound and that if the Court but I must, however, note the fact again that there are no fingerprints with respect to that Bill of Information, but as to the contents of the boykinization, I think State's Exhibit No. 7 is legally sufficient.
As to the 1989 felony the trial court stated: "The Court has reviewed the third set of documents under Case No. 334178, which do contain the plea form and the detailed minute entries (sic) shows that he waived his right. And the accompanying documents showing that he is fact the same Carl Lewis who is before the Court today...."[4]
The trial court declared that it had considered the waiver of rights or guilty plea *675 form (with the defendant's initials next to each right) and the minute entry. The August 15, 1989 minute entry merely provides: "Thru Counsel, Each Defendant entered a plea of Guilty as Charged. Guilty plea forms signed." However, the bill of information (with no fingerprints) and the arrest register (with fingerprints that matched the defendant's fingerprints on the rear of it) were also before the trial court, which concluded that the 1989 guilty plea could be used to adjudicate the defendant a third offender.
The defendant attacks the validity of the 1989 waiver of rights form. He argues that the 1989 guilty plea form (as it appears in the appellate record) does not include the signatures of the defendant, the judge, or defense counsel. However, the defendant did in fact initial each right. The defendant also argues that the waiver of rights form does not include an explanation that his exercise of his right to remain silent could not be used against him by the judge or the jury. The State notes that the defendant initialed the statement that he was waiving "the privilege against self-incrimination of having to take the stand myself and testify...." and initialed the declaration: "I am waiving my privilege against self-incrimination and by pleading guilty I am in fact incriminating myself."
The defendant also contends that the plea was not knowing and voluntary because the trial court did not inform him of the mandatory minimum sentence of five-years. The State counters that for multiple bill purposes the State is not required to show that the defendant was aware of the statutory minimum.[5]
The State correctly argues that defense counsel did not object to the validity of the defendant's 1989 waiver of rights form at the hearing, and counsel's statements during the multiple bill hearing that the waiver of rights form was legally sound and that the contents of the Boykinization were legally sufficient indicated that there were no defense objections to the guilty plea form or the Boykinization including the right against self-incrimination.[6] The defendant even noted in his brief that he made the argument "notwithstanding counsel's failure to object on the specific grounds noted below." The defendant had merely filed a general notice of objections and never objected at the hearing to the use of the prior conviction or the validity of the waiver of rights form in 334-178 "A". The State persuasively argues that the defendant should not be allowed to make such a claim for the first time on appeal. If the defendant does not object at the hearing, the issue has not been properly preserved for review under *676 La.C.Cr.P. art. 841. State v. Bazile, 99-2011(La.App. 4 Cir. 4/26/00), 762 So.2d 106.
This assignment of error lacks merit.

PRO SE ASSIGNMENT OF ERROR NUMBER 2
The defendant argues that the 1980 guilty plea for simple burglary and aggravated battery (278-476 "C") was improperly used to adjudicate him a triple offender. He argues that he was not informed of the maximum sentence under La.C.Cr.P. art. 556.1 and the guilty plea form did not set out the maximum sentence. He also contends that the minute entry of the guilty plea did not sufficiently show that the defendant was properly advised of his rights. However, the bill of information, the docket master, and the guilty plea or waiver of rights form with the defendant's initials placed next to each right and his signature (along with the signatures of his counsel and the judge) were also submitted. The defendant also argues that the State presented no evidence that the five-year cleansing period had not expired before the 1989 crime was committed.
As noted above the defendant filed only a general objection to the multiple bill and the sufficiency of the State's proof and Boykinization. He did not specifically mention case 278-476 "C" in his written objections. However, at the multiple offender hearing defense counsel argued that the State's proof relating to the 1980 case was defective because the State did not provide a Boykin transcript and the court did not notify the defendant of the maximum penalty (or possible fines). Counsel also noted that there was no pen pack to show a release date as to that sentence (original sentence on September 15, 1980 multiple offender sentence September 21, 1981) in order to see if the cleansing period had expired before the 1989 crime.
At the end of the multiple offender hearing the trial court correctly noted that the State submitted the waiver of rights form which set out the maximum sentences possible and discounted the argument as to fines. The court properly ruled that the State produced the guilty plea form showing that the defendant was advised of his rights and the minute entry, which indicated that the defendant had been interrogated as to his rights and waived them. The court also stated that the defendant's counsel, whom the court knew, would have advised the defendant of his rights.
The defendant also argues that the five-year cleansing period from the 1981 conviction expired before the 1989 crime. The jurisprudence has consistently held that the cleansing period (beginning to run from the date the defendant is discharged from state custody and supervision) in effect at the time the newest offense was committed controls for purposes of La. R.S. 15:529.1. State v. Rolen, 95-0347 (La.9/15/85), 662 So.2d 446; State v. Causey, 98-1946 (La.App. 4 Cir. 1/26/00), 752 So.2d 287; State v. Carr, 96-2388 (La.App. 4 Cir. 9/10/97), 699 So.2d 1105, writ denied, 97-2633 (La.2/6/98), 709 So.2d 732. Prior to the 1994 amendment to La. R.S. 15:529.1(C), the cleansing period was five years. The time period was enlarged from five to ten years by 1994 La. Acts, 3rd ExSess., No. 85. In 1995 the cleansing time was enlarged from seven to ten years. 1995 La. Acts, No. 839, § 1.
The version of La. 15:529.1(C) in effect at the time of the instant offense (April 1995) provided:
This Section shall not be applicable in cases where more than seven years have elapsed since the expiration of the maximum sentence, or sentences, of the previous conviction or convictions, or adjudication or adjudications of delinquency, and the time of the commission of the *677 last felony for which he has been convicted. In computing the period of time as provided herein, any period of servitude by a person in a penal institution, within or without the state, shall not be included in the computation of any said seven-year periods. (Emphasis added)
Where less than the time limitation has lapsed between convictions, it is not necessary for the State to prove discharge dates. State v. Nicholas, 97-1991 (La.App. 4 Cir. 4/28/99), 735 So.2d 790, writ denied, 99-1511 (La.10/29/99), 748 So.2d 1159. More than seven years elapsed between the 1981 and 1989 convictions. Therefore, it was necessary for the State to prove the discharge dates. See State v. Chisolm, 99-1055 (La.App. 4 Cir. 9/27/00) 771 So.2d 205. The State did not carry its burden of proof, they did not produce the pen packs to show any discharge dates.
This Court has consistently held that the cleansing period is determined according to the date of the last or newest crime. In State v. Roach, 97-1852 (La.App. 4 Cir. 11/26/97), 706 So.2d 491, the defendant had pleaded guilty in December 1985 to simple burglary; he was arrested on two felony charges in April 1996 (convicted on one and pleaded guilty on the other). The trial court found the defendant not guilty as a multiple offender based on the fact that the five-year cleansing period should have applied to the 1985 conviction. This Court reversed and remanded for a multiple offender hearing. This Court concluded:
In the instant matter, the 1995 amendment to the statutory cleansing period did not eliminate any defense available under the law existing when the defendant committed the possession of stolen property and cocaine possession offenses in 1996, the only relevant crimes for purposes of this analysis. At the time of his arrest on April 28, 1996, defendant had been placed on notice by the State that the cleansing period had changed and he could no longer rely on the former five-year cleansing period which was applicable in 1985 at the time of his first conviction. There was no violation of the Ex Post Facto clause.
706 So.2d at 493.
In State v. Brady, 97-1095 (La.App. 4 Cir. 2/3/99), 727 So.2d 1264, one of the codefendants was adjudicated a fourth felony offender based on predicate convictions in 1981, 1984, and 1993; the newest offenses occurred in 1995. The defendant argued that the five-year cleansing period applied to the 1981 and 1984 convictions and the cleansing period elapsed before the next crime was committed. This Court discussed Rolen and the subsequent jurisprudence:
In State v. Rolen, 95-0347 (La.9/15/95), 662 So.2d 446, the defendant was convicted of his second offense of operating a motor vehicle while intoxicated, a violation of La. R.S. 14:98. At the time of Rolen's conviction, La. R.S. 14:98(F) provided an enhanced sentence for a second offense, provided that ten years had not elapsed from the commission of the previous offense. At the time of Rolen's first conviction, that statute provided for a five-year prescriptive period. Subsequent to the expiration of that five-year period following Rolen's conviction, La. R.S. 14:98(F) was amended to extend the prescriptive period to ten years. The Louisiana Supreme Court held that the application of the ten-year period was not barred by the ex post facto clauses of the U.S. and Louisiana constitutions, nor was *13 it otherwise fundamentally unfair.
* * *
In State v. Boykin, 29, 141 (La.App. 2 Cir. 1/31/97), 688 So.2d 1250, the court *678 held that the applicability of the seven-year cleansing period of La. R.S. 15:529.1(C), as amended in 1994, was applicable to a 1987 felony conviction, even though the cleansing period at the time of the first conviction was five-years. The court applied the reasoning in Rolen, finding that the application of the extended cleansing period was not an ex post facto application of law, nor was it fundamentally unfair when applied to the defendant.
In State v. Brinson, 97-1471 (La.App. 4 Cir. 9/3/97), 699 So.2d 510, writ denied, 97-2452 (La.4/9/98), 717 So.2d 1137, the defendant was convicted of a felony in 1984. The defendant committed his second felony in 1996. After the 1996 conviction, the State charged the defendant as a second felony habitual offender. The trial court quashed the habitual offender information on the grounds that the five-year cleansing period of La. R.S. 15:529.1, in effect at the time of the earlier conviction, had elapsed, and the application of the amended ten-year cleansing period violated the ex post facto clauses of the U.S. and Louisiana constitutions. This court cited Rolen, finding no violation of ex post facto by the application of the extended cleansing period of amended La. R.S. 15:529.1(C), and stating:
The 1995 amendment to the statutory cleansing period did not eliminate any defense available under the law existing when the defendant committed his second offense in 1996, the only relevant crime for purposes of this analysis. At the time of his arrest in 1996 he had been placed on notice by the state that the cleansing period had been changed and he could no longer rely on the former five-year cleansing period which was applicable in 1984 at the time of his first crime. Thus, this court has applied the reasoning in Rolen to the legislature's extending of the cleansing period from seven to ten years in 1995.
Thus, this court has applied the reasoning in Rolen to the legislature's extending of the cleansing period from seven to ten years in 1995.
* * *
There is no showing that the application of the seven-year cleansing period rather than the five-year period resulted in the facts surrounding defendant's prior guilty pleas becoming "obscured by the passage of time." It has not been shown that defendant disbanded his witnesses and discarded evidence he otherwise would have used to defend himself against the habitual offender bill of information, due to his belief that the five-year cleansing period as applicable.
The application of the seven-year cleansing period is not the application of an ex post facto law, nor is such application otherwise fundamentally unfair to defendant.
(Footnote omitted)[7]Id. at pp. 12-16, 727 So.2d at 1270-72.
This Court has continued to hold that when the last (or newest) crime was committed after the 1995 amendment to la. R.S. 15:529.1(C) enlarging the cleansing period to ten years, then the ten year period is applied to all the predicate offenses. State v. Chisolm, 99-1055 (La. App. 4 Cir. 9/27/00), 771 So.2d 205. In Chisolm the defendant had convictions in 1983, 1989, 1993 and 1996. Applying the *679 ten year cleansing period because the newest offense was committed in 1996, this Court stated that the State's documents were sufficient to indicate that the cleansing period did not elapse between any two convictions and therefore the State did not have to prove the exact discharge dates. Id.[8]
However, very recently in State v. Everett, 99-1963 (La.App. 4 Cir. 9/27/00), 770 So.2d 466, this Court was faced with arguments from a defendant who was charged as a third offender in his aggravated battery conviction in 1999.[9] There the State did not provide evidence of the discharge dates relating to two predicate offenses: a 1984 conviction for being a felon in possession of a firearm with a three year sentence; and a 1993 conviction for felony theft with an eighteen month sentence, which was suspended with eighteen months of probation. This Court noted that the five-year cleansing period was enlarged to seven years in 1994 and it was enlarged from seven to ten years in 1995. This Court declared that if the defendant had served the entire three year sentence for his 1984 conviction, the five-year cleansing period in existence in 1993 when he committed the crime would have expired before he committed the 1993 offense. This Court stated that State v. Rolen, 95-0347 (La.9/15/85), 662 So.2d 446, was critically different because Rolen had received notice when the statute was amended that the cleansing period had been expanded prior to committing the second offense. This Court concluded:
For, at the time he committed the second (the 1993) offense, Everett "had [not] been placed on notice by the state that [the cleansing period] had changed" and that "he could no longer rely on the five-year cleansing period to abate the collateral consequences of his prior [the 1983] offense for any future violation." In this case, "[t]he Ex Post Facto Clause required ... more." Rolen, supra. In effect, Everett had complied with the Habitual Offender Law in effect at that time.
Under these facts, using an extended cleansing period, enacted after the prior offenses (i.e. ex post facto), to link said prior offenses would violate the ex post facto clause.
Everett, 99-1963 at p. 20, 770 So.2d at 477.
The 1981 and 1989 convictions did not occur within the seven or five year time period. Therefore, the 1981 conviction was improperly used as a predicate offense to adjudicate the defendant a multiple offender. Regardless, in light of this Court's recent opinion in State v. Everett, that conviction was not properly used as a predicate offense. The defendant's adjudication as a third offender and sentence should be vacated and the matter remanded for resentencing as a second offender.
This assignment of error has merit.

COUNSELED ASSIGNMENT OF ERROR NUMBER 2

PRO SE ASSIGNMENT OF ERROR NUMBER 1
The defendant pro se and defense counsel argue that the life sentence under La. R.S. 15:529.1(A)(1)(b)(ii) is illegal because his possession of cocaine conviction does *680 not qualify under the version of the statute in effect at the time of the offense to be used to find the defendant a triple offender and to sentence him to life imprisonment. He claims that he should have been sentenced to a maximum of ten years under the proper version of La. R.S. 15:529.1(A)(1)(b)(ii).
The applicable enhancement statute is the one existing at the time of the commission of the offense for which the sentence is to be enhanced. State v. Rolen, 95-0347 (La.9/15/95), 662 So.2d 446; State v. Johnson, 97-0317 (La.App. 4 Cir. 8/19/98), 718 So.2d 553. At the time of the commission of the instant offense in April 1995, the version of La. R.S. 15:529.1(A)(2)(b)(ii) in effect provided:
A. (1) Any person who, after having been convicted within this state of a felony or adjudicated a delinquent under Title VIII of the Louisiana Children's Code for the commission of a felony-grade violation of either the Louisiana Controlled Dangerous Substances Law involving the manufacture, distribution, or possession with intent to distribute a controlled dangerous substance or a crime of violence as listed in Paragraph (2) of this Subsection, or who, after having been convicted under the laws of any other state or of the United States, or any foreign government of a crime which, if committed in this state would be a felony, thereafter commits any subsequent felony within this state, upon conviction of said felony, shall be punished as follows:
(a) If the second felony is such that upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life, then the sentence to imprisonment shall be for a determinate term not less than one-half the longest term and not more than twice the longest term prescribed for a first conviction;
(b) If the third felony is such that upon a first conviction, the offender would be punishable by imprisonment for any term less than his natural life then:
(i) The person shall be sentenced to imprisonment for a determinate term not less than two-thirds of the longest possible sentence for the conviction and not more than twice the longest possible sentence prescribed for a first conviction; or
(ii) If the third felony and each of the two prior felonies are felonies defined as a crime of violence under R.S. 14:2(13) or as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for more than five-years or any other crime punishable by imprisonment for more than twelve years, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.[10]
(Emphasis added).
It is apparent that the trial court sentenced the defendant under La. R.S. *681 15:529.1(A)(2)(b)(ii) to the mandatory life sentence without benefit of parole, probation, or suspension of sentence. Under the 1995 version of La. R.S. 15:529.1(A)(1)(b)(ii), the third felony and the two prior felonies had to fall under the statute in order for the defendant to be sentenced to life imprisonment. In the instant case the jury convicted the defendant of simple possession of cocaine, which was not a felony defined as a crime of violence under La. R.S. 14:13 or a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for more than five-years. The sentence for the instant conviction for simple possession of cocaine under the 1995 version of La. R.S. 40:967(C)(2) was imprisonment with or without hard labor for not more than five-years; the third felony was not an enumerated felony under the statute. The trial court erred by using the "three strikes" provision to sentence the defendant to life imprisonment. See State v. Carr, 699 So.2d at 1105.
These assignments of error have merit. The defendant's sentence must be vacated and the case remanded for resentencing under the 1995 version of La. R.S. 15:529.1(A)(1)(b)(i).

CONCLUSION
The defendant's conviction is affirmed. The defendant's adjudication as a third offender should be vacated and the matter remanded for resentencing as a second offender under the 1995 version of La. R.S. 15:529.1(A)(1)(b)(i).
CONVICTION AFFIRMED; SENTENCE VACATED; REMANDED FOR RESENTENCING.
NOTES
[1] At the preliminary hearing the detective also answered affirmatively when he was asked whether the key was obtained pursuant to the defendant's arrest prior to the signing of the search warrant. He also said that the defendant was arrested at 7:50 p.m. Whether the officers entered and secured the building prior to the signing of the warrant would not invalidate the search; however, at trial Detective Lemoine clearly stated that he had the search warrant when he entered the building at 2722 Banks Street.
[2] Therefore, the defense counsel's objections that the evidence at the hearing failed to show that the requirements of Boykin had been met and that the State failed to prove the defendant's identity were general allegations made before the hearing was held.
[3] Although Officer Burmaster clearly stated that there were fingerprints on the rear of the 1989 arrest register, it is not clear whether the fingerprints copied and placed in the record along with the other documents relating to predicate offenses were those from the reverse side of that arrest register.
[4] The trial court did find that the documents relating to the 1978 conviction for simple burglary and aggravated battery (266-674 "C") were not sufficient and that prior felony could not be used to enhance the defendant's sentence. Therefore, the Court found the defendant a third offender instead of the charged fourth felony offender.
[5] Advice as to the sentencing minimum and maximum exposure has never formed part of the Louisiana Supreme Court's core Boykin requirements for the entry of a presumptively valid guilty plea in any case. State v. Anderson, 732 So.2d at 517. Such advice was not mandated by statute until La.C.Cr.P. art. 556.1, which was added by Acts 1997, No. 1061 § 1 (effective date, August 15, 1998). There was no such statutory requirement to advise the defendant of his sentencing exposure or the minimum sentence at the time of the taking of the 1989 guilty plea. Regardless, the Supreme Court has adopted the harmless error test as to violations of La. C.Cr.P. art. 556.1(A)(1) and (E). State v. Guzman, 99-1528 and 99-1753 (La.5/16/00), 769 So.2d 1158.
[6] At the hearing defense counsel focused on the proof of identification and the fact that the fingerprints were not on the back of the bill of information; however, the expert found that the fingerprints on the arrest register relating to the 1989 guilty plea matched the fingerprints of the defendant taken in court that day. This Court has affirmed the defendant's multiple offender status where the fingerprints were on the back of an arrest register rather than on the bill of information. State v. Bazile, 762 So.2d at 106.
[7] The omitted footnote noted that it was unclear whether the cleansing period for the predicate felony in Brinson had elapsed at the time of the amendments extending the cleansing period. However, the cleansing period had elapsed in Rolen.
[8] This Court first noted that the issue had not been properly preserved for review on appeal and then concluded that the claim had no merit.
[9] This writer has attached the pertinent discussion from the CS memo in Everett, 99-KA-1963, which covered the jurisprudence from the circuit courts relating to the issue of the cleansing period under La. R.S. 15:529.1(C) and the ex post facto argument.
[10] La. R.S. 15:529.1(A)(2)(b)(ii) (subsequent to 1995 Acts 1245, § 1) currently provides:

A. (1) Any person who, after having been convicted within this state of a felony or adjudicated a delinquent under Title VIII of the Louisiana Children's Code for the commission of a felony-grade violation of either the Louisiana Controlled Dangerous Substances Law involving the manufacture, distribution, or possession with intent to distribute a controlled dangerous substance or a crime of violence as listed in Paragraph (2) of this Subsection, or who, after having been convicted under the laws of any other state or of the United States, or any foreign government of a crime which, if committed in this state would be a felony, thereafter commits any subsequent felony within this state, upon conviction of said felony, shall be punished as follows:
(b) If the third felony is such that upon a first conviction, the offender would be punishable by imprisonment for any term less than his natural life then:
* * *
(ii) If the third felony or either of the two prior felonies is a felony defined as a crime of violence under R.S. 14:2(13) or as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for more than five-years or any other crime punishable by imprisonment for more than twelve years, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.
(emphasis added)